THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *v.* JOHN McGREAL, Appellee.

(No. 54940; )

First District—December 21, 1971.

*Rehearing denied February 1, 1972.*

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Joseph Romano, Assistant State's Attorneys, of counsel,) for the People.

Daniel L. Houlihan, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

Pursuant to Supreme Court Rule 604(a)(1),[1] the State (hereafter called appellant), appeals from a judgment that dismissed three counts of a four-count indictment. It presents two issues. 1. Whether counts one, two and three of the indictment stated an offense. 2. Whether the trial court erred in ruling that prosecution of counts one, two and three of the indictment was barred by the statute of limitations.

I

On January 19, 1967, John McGreal (hereafter called appellee), was a Civil Service Code Enforcement Inspector II in the Building Department of the City of Chicago. In his capacity as a public employee, he inspected a building at 4919 South Michigan Avenue; and because it contained more dwelling units than allowed by the city code, he recommended that legal action be taken against the owner. The suit was filed. On June 5, 1967, appellee as a witness for the plaintiff city, testified that the 4919 South Michigan building was in compliance with the building code. The suit was dismissed. Nothing happened concerning this matter until April 30, 1968, when a newspaper reporter and an investigator from the Better Government Association went to the office of the Commissioner of Buildings and asked to examine records of the department. The Building Commissioner assigned the inquiry to Emmet Duffy, the Assistant Commissioner. In their conversation with Duffy, the newspaper reporter and the investigator "[i]ntimated that there could be a possibility of perjury

---

[1] Ill. Rev. Stat. 1969, ch. 110A, par. 604 (Supreme Court Rule 604). Appeals from Certain Judgments and Orders.
"(a) Appeals by the State.
(1) *When State May Appeal.* In criminal cases the State may appeal only from an order or judgment, the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence."

on the part of certain inspectors." As a result, an investigation was begun on April 30, 1968, with another inspector, a man named Kantor, being sent to 4919 South Michigan Avenue. Kantor made a report of his inspection of April 30. Additional inspections of the building were made on July 30 and September 5, 1968. On September 13, 1968, appellee was. suspended. The following week, on September 17, he appeared and testified before the State Senate Municipal Corporations Committee.

Following this appearance, on October 4, the chairman of the Committee wrote to the State's Attorney of Cook County and called his attention to the "[b]uilding code enforcement practices of the Chicago Department of Buildings." One of the buildings mentioned was 4919 South Michigan Avenue. A short time later, October 23, the State's Attorney requested the Building Department to furnish him with all information concerning the mentioned building, and others. This was done. On July 3, 1969, a four-count indictment was returned against appeal. Counts one and two charged appellee with official misconduct, count three charged him with perjury. Each count contained the allegation "[t]hat the State's Attorney of Cook County, the proper prosecuting officer, first discovered and first became aware less than one year prior to July 3, 1969 that the said offense * * * had been committed, said date of July 3, 1969 being the date of return of the instant indictment."

Before trial, invoking section 114—1 of the code of criminal procedure,[2] appellee filed a motion to dismiss the indictment on the ground that none of the four counts stated an offense and that prosecution of the first three counts was barred by the statute of limitations. Appellant answered the motion. Hearing was set, and appellee called as his only witness, Emmett Duffy, the Assistant Commissioner.

Duffy described the occurrence of April 30, 1968, when the newspaper reporter and the investigator requested opportunity to examine the Building Department files and the investigation that followed. Duffy said he was familiar with the four counts of the indictment. He was asked when their allegations were "[f]irst brought to the attention of the Department of Buildings of the City of Chicago?" Duffy answered, "On or about April

---

[2] Ill. Rev. Stat. 1969, ch. 38, par. 114—1. Motion to Dismiss Charge.

"(a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:
 * * *

(2) The prosecution of the offense is barred by Sections 3-3 through 3-8 of the "Criminal Code of 1961", approved July 28, 1961, as heretofore and hereafter amended:
 * * *

(8) The charge does not state an offense; * * *."

30, 1968, as a result of the inspection of Mr. Kantor." Duffy's direct and cross-examination concluded hearing of the evidence. Appellee then contended that counts one, two and three were barred by the statute of limitations because more than 18 months (as required by the general limitations statute, Ill. Rev. Stat. 1969, ch. 38, par. 3—5) had passed before the indictment against him was returned on July 3, 1969.

To meet this contention, appellant argued that appellee was a public employee and that the time limitation for prosecution of counts one, two and three was governed by Ill. Rev. Stat. 1969, ch. 38, par. 3—6(b), a statute which, according to appellant's construction, extended the limitations period one year after the proper prosecuting officer becomes aware of a misconduct in office. To this argument appellee responded that the extended limitations period began to run on April 30, 1968 when the reporter and the BGA investigator spoke with Duffy, and Kantor was sent to inspect the building. Appellant insisted, however, that the extended limitations period began on September 13, 1968, when the Building Department investigation was concluded and appellee was suspended. Therefore, appellant argued, return of the indictment on July 3, 1969, was less than one year prior to the time that the State's Attorney of Cook County, the proper prosecuting officer, first discovered and first became aware of the offense charged in counts one, two and three. After hearing the arguments, the trial judge ruled that appellee's motion to dismiss "[a]s to the first three counts of the indictment, * * * will be sustained, namely, that knowledge, by someone, has been shown. That there was knowledge of the Building Department, which is a public body and a public officer and should be sufficient [sic]." Thereafter, following further argument, the trial judge dismissed count four because it was "[v]ague and insufficient." In this appeal, appellant does not question the dismissal of this count. It contends, however, that the trial judge erred in ruling that as to counts one, two and three the one-year extended period of limitations began to run on April 30, 1968, so as to bar prosecution of the indictment returned on July 3, 1969. Appellee, on the other hand, contends that the ruling was correct and that, in any event, neither count stated as offense.

## II.

■■ The first two counts charged that appellee committed official misconduct when on two occasions he knowingly performed an act he knew was forbidden by law. Count one alleged that appellee, under oath, testified falsely concerning the existence of previously reported building code violations in the building at 4919 South Michigan. Count two alleged that on June 1, 1967, appellee, having made an inspection, falsely reported that all code violations in the building had been corrected and that the

building was in compliance with the applicable provisions of the code. Count three charged that on June 5, 1967, appellee committed perjury when, under oath, he made a false statement which was material to the issue on trial. Over appellant's insistence that this question was not decided in the trial court, appellee contends that these counts fail to state an offense because they did not contain particularized allegations. We are satisfied, after examining the counts involved, that although they are not models of criminal pleading, they are adequate. These counts charged official misconduct and perjury with allegations describing the circumstances under which each offense was allegedly committed by appellee. Thus, using statutory language, and with adequate particularity, the counts informed appellee of the nature and elements of the charges against him. (*People v. Bauer*, 111 Ill.App.2d 211, 249 N.E.2d 859.) He was apprised of the crimes for which he was to stand trial. From the allegations in each count, he could intelligently prepare his defense and plead the judgment in bar of a subsequent prosecution for the same offenses. (*People v. Grieco*, 44 Ill.2d 407, 255 N.E.2d 897; 42 C.J.S. Indictments and Informations, § 100.) For these reasons we are compelled to reject the contention that counts one, two and three did not state an offense.

■■ The principal issue in this case concerns application of the statute of limitations. In resolving this issue, we must first determine whether the counts involved charged appellee with a felony or a misdemeanor. Therefore, we must look to the penalty which may be imposed on conviction of the offenses. (*People v. Kurtz*, 69 Ill.App.2d 282, 216 N.E.2d 524, affirmed in part, reversed in part on other grounds, 37 Ill.2d 103, 224 N.E.2d 817.) The charges were official misconduct on counts one and two, perjury in count three, each offense punishable by a fine, imprisonment in a non-penitentiary institution or imprisonment in the penitentiary. (Ill. Rev. Stat. 1969, ch. 38, pars. 32—2(a) and 33—3.) These offenses on conviction call for alternative penalties. The presence of alternative penalties of imprisonment other than in the penitentiary makes an offense a misdemeanor. (*People v. Novotny*, 41 Ill.2d 401, 244 N.E.2d 182.) Being misdemeanors, prosecution of counts one, two and three had to be commenced "[w]ithin one year and 6 months after [their] commission * * *." (Ill. Rev. Stat. 1969, ch. 38, par. 3—5.) It was alleged that the offenses charged occurred on June 1 and June 5, 1967. As a consequence, the 18-month period of limitations expired on December 5, 1968. The indictment was returned July 3, 1969; therefore, by the general statute of limitations, prosecution of counts one, two and three was barred. *People v. Rhodes*, 308 Ill. 146, 139 N.E.53; compare *People v. Hill*, 68 Ill.App.2d 369, 216 N.E.2d 212.

Appellant, however, contends that because appellee was a public employee, and he was charged with misconduct in office, the prosecution was governed by the extended limitations provisions of Ill. Rev. Stat. 1969, ch. 38, par. 3—6(b) which provides "[a] prosecution for any offense based upon misconduct in office by a public officer or employee may be commenced within one year after discovery of the offense by a person having a legal duty to report such offense, or in the absence of such discovery, within one year after proper prosecuting officer becomes aware of the offense." Applying the established principles of statutory construction, and in a case of first impression, we must decide what is meant by the words "discovery of the offense" and "a person having a legal duty to report such offense." The meaning of these words will determine whether the trial judge erred in ruling that on April 30, 1968, when the newspaper reporter and the BGA investigator spoke with Emmet Duffy, there was a discovery of the offense of official misconduct and perjury.

■■■ Appellee meets appellant's contention with the argument that the extended limitations period has no application to this case because on September 13, 1968, (when appellant claims the offenses were discovered) there still remained approximately three months to December 5, 1968, the expiration date of the general statute of limitations. This argument suggests a construction of Ill. Rev. Stat. 1969, ch. 38, par. 3— 6(b) which would preclude extending the time for prosecution of a misconduct in office discovered on the day the general period of limitations expires. Clearly, this construction is somewhat absurd; there is a more logical construction that can be placed on the extended limitations statute. It is a familiar principle of statutory construction that where two or more constructions can be placed on a statute, a court will select that construction which leads to a logical result and avoids the absurd. (*Board of Ed. v. Community High School Dist. No. 211*, 89 Ill.App.2d 481, 485, 232 N.E.2d 316.) This principle leads us to conclude that application of the extended limitations period is not limited only to the case where the general period of limitations has expired.

As an additional ground for preclusion of the extended limitations period to this case, appellee points to the absence in counts one, two and three of any allegation that the alleged misconduct in office was discovered by a person having the legal duty to report such offense. Appellee concedes that each count alleges the State's Attorney of Cook County first discovered and became aware of the offense less than one year prior to the return of the indictment. Nonetheless, appellee insists that these allegations do not bring the case within an exception under which an indictment may be returned after expiration of the statute of

limitations. Compare *People v. Ross*, 325 Ill. 417, 420, 156 N.E. 303 and *Lamkin, et al. v. The People*, 94 Ill. 501.

■■ We do not agree. Each of the three counts alleges in the words of the statute, a substantial portion of Ill. Rev. Stat. 1969, ch. 38, par. 3—6(b). The allegation that "[t]he State's Attorney ＊ ＊ ＊ the proper prosecuting officer, first discovered and first became aware less than one year prior to July 3, 1969 that the said offense ＊ ＊ ＊ had been committed ＊ ＊ ＊" brought the case within an exception under which an indictment may be returned after the statute of limitations has expired. Compare *People v. Hallberg*, 259 Ill. 502, 102 N.E. 1005.

■■■ The word "discovery," as it is used in the extended limitations statute, has no precise legal meaning. Webster, however, tells us that in the context with which we are concerned, it means "the act, process, or an instance of gaining knowledge of or ascertaining the existence of something previously unknown or unrecognized ＊ ＊ ＊ the act or an instance of finding or finding out (as something that was lost or hidden) ＊ ＊ ＊ something that is discovered (as by being brought to light, disclosed or ascertained) ＊ ＊ ＊." (Webster's Third International Dictionary (1966).) Where a statute requires that a prosecution for failure to file a tax return "[s]hall be brought within one year after the discovery by the Director of Revenue or his agents ＊ ＊ ＊," discovery within meaning of the statute calls for something more than merely having certain facts available. (See *State v. Civella* (No. 1963), 368 S.W.2d 444, 451.) By analogy, in the law of sureties, as to a discovery which may require action concerning a default, the obligee on a bond "[i]s not required to act until there is actual knowledge of a dishonest act or loss, mere suspicion thereof not being sufficient." (*Maryland Casualty Co. v. Magoffin County Bd. of Ed.* (Ky. 1962), 358 S.W.2d 353, 357.) In construing a statute which contained the words "discovery of fraud," the Supreme Court of Kansas in *Mingenback v. Mingenback* (1954), 176 Kan. 471, 271 P.2d 782, 787 held that the expression "[i]mplies knowledge and is not satisfied by mere suspicion of wrong. The suspicion may be such as to call for further investigation, but is not of itself a discovery."

■ In the case before us, we are concerned with the expressions "[d]iscovery of the offense ＊ ＊ ＊" and "[a] person having a legal duty to report such offense ＊ ＊ ＊." "Offense" means a violation of any penal statute of this State. (Ill. Rev. Stat. 1969, ch. 38, par. 2½; see *Home Indemnity Company v. Reynolds & Co.*, 38 Ill.App.2d 358, 187 N.E.2d 274.) "Person" is generally understood as denoting a natural person. Ordinarily, the word will be taken in that sense unless from a statutory context or elsewhere it appears that artificial persons are intended to be

embraced. (70 C.J.S. Person, 689; *Baker v. Kirschnek* (1935), 317 Pa. 225, 176 A. 489, 491.) "Legal duty" is that which the law requires be done or forborne by a determinate person. *Pennsylvania Co. v. Frana,* 13 Ill.App. 91, 98.

■■ From these sources of language and law we decide that the words "discovery of the offense" mean gaining knowledge of or finding out that a penal statute has been violated. The words "a person having a legal duty to report such offense" mean a natural person who by law is required to report an offense to the proper prosecuting authority. It is our judgment that by "a person," as the term is used in Ill. Rev. Stat. 1969, ch. 38, par. 3—6(b), the legislature meant the person in charge, that is, the head of a department, division or governmental agency. If it is claimed that a subordinate of such a person discovered a misconduct in office so as to trigger running of the one year extended period, there must be evidence that the subordinate was delegated the authority to report an offense to the proper prosecuting authority. This construction, we think, is compelled by the absence in the quoted language of any reference to agents or subordinates of the person who has the legal duty to report the offense of a public employee. Compare *State v. Civella, supra.*

As thus construed, we focus attention on the statute and on the testimony of Emmett Duffy. He was not asked nor did he say he was "a person having a legal duty to report * * *." the misconduct in office with which appellee was charged. It is true that Duffy said he was an Assistant Commissioner of the Building Department and that he had general supervision of all its records. This testimony was not evidence that the head of the department in which he served had delegated to him the legal duty to report offenses of misconduct in office by employees of the Chicago Building Department.

■■ Moreover, Duffy testified that neither the newspaper reporter nor the BGA investigator told him that appellee had committed official misconduct or perjury. The best he could say was that on April 30, 1968, the two "[i]ntimated that there could be a possibility of perjury on the part of certain inspectors." When pressed during cross-examination, Duffy said there was a possibility that in later conversations, the name of appellee was mentioned. Duffy admitted that from conversations with the reporter and the investigator "[t]he intimation was there that an offense had been committed, but we gave no more credence to that than we do to anyone else that walks in off the street making charges about an inspector." This lack of credence is reflected in the fact that after April 30 two other inspections were made of the building at 4919 South Michigan Avenue: on July 30 and on September 5, 1968. Then, on

September 13, 1968, appellee was suspended. Giving Duffy's testimony all the credibility to which it was entitled, it appears only that between April 30 and September 13, 1968, the conduct of appellee and other inspectors of the Chicago Building Department was under suspicion. This was not a "[d]iscovery of the offense by a person having a legal duty to report * * *" as we have construed the extended limitations statute. The discovery, if at all, occurred on September 13, 1968 when the Building Department Commissioner suspended appellee. Therefore, it was error for the trial judge to dismiss counts one, two and three of the indictment on the ground, as he said, "[t]hat knowledge by someone, [on April 30, 1968] has been shown. That there was knowledge of the Building Department * * *." The judgment is reversed and the cause is remanded with directions that the trial court overrule appellee's motion to dismiss counts one, two and three, vacate the order quashing the indictment and restore this cause to the trial docket for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

SCHWARTZ and GOLDBERG, JJ., concur.