# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Chenoweth*, 2013 IL App (4th) 120334

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BARBARA J. CHENOWETH, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0334 |
| Filed | October 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful financial exploitation of an elderly person was reversed where the indictment and subsequent information were filed after the three-year limitation period had expired, notwithstanding the State's claim that the extended statute of limitations applied based on the filing of the indictment and subsequent information within one year of the date of the State's Attorney's "discovery of the offense," *i.e.*, the date he became aware of the investigative file, since the crucial date for purposes of the extended statute of limitations was the date the aggrieved person discovered the offense and, here, that was the date the aggrieved person learned that defendant had written unauthorized checks from the aggrieved person's account, and the indictment was filed more than one year after that date. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 09-CF-725; the Hon. William O. Mays, Judge, presiding. |
| Judgment | Vacated. |

Counsel on          Michael J. Pelletier, Karen Munoz, and Janieen R. Tarrance, all of State
Appeal              Appellate Defender's Office, of Springfield, for appellant.


                    Jonathan H. Barnard, State's Attorney, of Quincy (Patrick Delfino,
                    Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys
                    Appellate Prosecutor's Office, of counsel), for the People.

Panel               JUSTICE KNECHT delivered the judgment of the court, with opinion.
                    Justice Holder White concurred in the judgment and opinion.
                    Justice Pope dissented, with opinion.




**OPINION**


¶ 1      In January 2012, following a bench trial, defendant, Barbara J. Chenoweth, was found guilty of unlawful financial exploitation of an elderly person (720 ILCS 5/16-1.3(a) (West 2004)).

¶ 2      In March 2012, defendant filed (1) a motion to vacate judgment and dismiss the cause due to the expiration of the statute of limitations and (2) a motion to vacate judgment and dismiss the cause due to failure of the State to prove defendant guilty beyond a reasonable doubt. In April 2012, the trial court denied both motions and defendant was sentenced to four years' probation and ordered to pay $32,266 restitution.

¶ 3      On appeal, defendant asserts (1) her conviction and sentence for unlawful financial exploitation of an elderly person (720 ILCS 5/16-1.3(a) (West 2004)) must be vacated because the indictment and later information charging her with the offense (a) were filed after the statute of limitations had expired and (b) failed to allege any circumstances that would extend the limitations period; and (2) if her conviction and sentence are affirmed, she is entitled to $5 credit against her fine for time spent in pretrial custody.


¶ 4                              I. BACKGROUND

¶ 5      In October 2008, Detective Thomas Liesen was contacted by Vickie Tipton, head of guardianship for the West Central Illinois Area Agency on Aging (Agency on Aging), and Donna Schutte, the Illinois state regional ombudsman for the area. They informed him money from the March 2005 sale of Ella Stathakis' home was missing. At the time of the March 2005 sale through August 2008, defendant held the power of attorney for Ella. In September 2008, Lynn Niewohner from the Agency on Aging became Ella's power of attorney.

¶ 6      On October 15, 2008, Detective Liesen interviewed Ella. According to Detective Liesen, Ella "was wondering where the funds went from the sale of her home, wanted to know where

it went. She had never been told, and she just wanted to know where it was." Two days later, he issued a subpoena for her Bank of America records. He received the records in the mail on December 2, 2008.

¶ 7        While examining Ella's bank records, Detective Liesen noticed several checks written by defendant and drawn on Ella's account did not appear to be for Ella's benefit. These included multiple checks written for cash and to Mark Twain Casinos, one to the utility company for defendant's address, and one to the telephone company for defendant's daughter's telephone. On December 5, 2008, Detective Liesen spoke with Ella again. Ella told him she had not given defendant permission to write these checks or to pay other people's bills.

¶ 8        On December 11, 2008, Detective Liesen interviewed defendant. Defendant's daughter, Christina Shannon, was also present during the interview. Defendant told Detective Leisen some of the money from the sale of Ella's home was used to pay Ella's bills and some of the money was used to pay Shannon back money she "had fronted to keep the house going and to get the house ready for sale." Defendant also explained she had taken out a loan in Ella's name to make repairs to Ella's house, ready the house for sale, and to pay Ella's nursing home bill. Specifically, defendant stated she had purchased window coverings, drapes, and paint for Ella's house, and had paid persons to paint the interior and exterior of the house. Defendant explained she did not have any receipts, and any she may have had, she had already given to the Illinois Department of Human Services. Detective Liesen further noted defendant used $4,000 of the sale proceeds to purchase a car for Shannon as compensation for work she had done for Ella, and he believed defendant kept $6,000 of the sale proceeds for herself.

¶ 9        On January 22, 2009, Detective Liesen sent a report of his investigation to the State's Attorney's office. On December 21, 2009, an Adams County indictment was filed charging defendant with three counts of unlawful financial exploitation of an elderly person.

¶ 10       In May 2010, defendant filed a motion to dismiss the indictment, asserting prosecution was not commenced within the statutory limitations period. On June 3, 2010, the State filed a motion to dismiss the bill of indictment and for leave to file an information alleging why the statute of limitations did not prohibit its charges. On June 9, 2010, the trial court granted the State's motion. That same day, the State filed an information charging defendant with three counts of unlawful financial exploitation of an elderly person. The State alleged the statute of limitations was stayed "in that this same charge was filed against the defendant on 12-21-09 by Bill of Indictment, which was within one (1) year of the proper prosecuting officer, the Adams County State's Attorney, becoming aware of the offense when the investigative file *** was referred to that prosecuting officer on 1-22-09."

¶ 11       On June 14, 2010, defendant filed a motion to dismiss the information, again asserting the charges were filed beyond the applicable statute of limitations. On July 12, 2010, the trial court denied defendant's motion to dismiss, finding "the limitations period did not begin to run until the police report was delivered to the proper prosecuting officer which is January 22, 2009."

¶ 12       In October 2010, defendant waived her right to a jury trial. In March 2011, defendant's

bench trial commenced. Both parties submitted written closing arguments. In January 2012, the trial court found defendant guilty of unlawful financial exploitation of an elderly person.

¶ 13 In March 2012, defendant filed (1) a motion to vacate judgment and dismiss the cause due to the expiration of the statute of limitations and (2) a motion to vacate judgment and dismiss the cause due to failure of the State to prove defendant guilty beyond a reasonable doubt. In April 2012, the trial court denied both motions and defendant was sentenced to four years' probation and ordered to pay $32,266 restitution.

¶ 14 This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16 On appeal, defendant asserts (1) her conviction and sentence for unlawful financial exploitation of an elderly person (720 ILCS 5/16-1.3(a) (West 2004)) must be vacated because the indictment and later information charging her with the offense (a) were filed after the statute of limitations had expired and (b) failed to allege any circumstances that would extend the limitations period; and (2) if her conviction and sentence are affirmed, she is entitled to $5 credit against her fine for time spent in pretrial custody.

¶ 17                 A. Validity of the Indictment and Subsequent Information

¶ 18 Section 3-5(b) of the Criminal Code of 1961 (Criminal Code) provides as follows:

"Unless the statute describing the offense provides otherwise, or the period of limitation is extended by Section 3-6, a prosecution for any offense not designated in Subsection (a) must be commenced within 3 years after the commission of the offense if it is a felony ***." 720 ILCS 5/3-5(b) (West 2004).

¶ 19 In this case, the State charged defendant by indictment on December 21, 2009, and by subsequent information on June 9, 2010, for crimes committed on or about December 1, 2004, through July 31, 2005. Thus, the State charged defendant with unlawful financial exploitation of an elderly person beyond the three-year limitation provided by statute. To circumvent the general statute of limitations, the State invoked section 3-6 of the Criminal Code in the subsequent information, which extends the statute of limitations, in part, under the following conditions:

"(a) A prosecution for theft involving a breach of a fiduciary obligation to the aggrieved person may be commenced as follows:
        ***
        (2) In any other instance, within one year after the discovery of the offense by an aggrieved person, or by a person who has legal capacity to represent an aggrieved person or has a legal duty to report the offense, and is not himself or herself a party to the offense; or in the absence of such discovery, within one year after the proper prosecuting officer becomes aware of the offense. However, in no such case is the period of limitation so extended more than 3 years beyond the expiration of the period otherwise applicable." 720 ILCS 5/3-6 (West 2004).

Specifically, the State asserted the "charge was filed against the defendant on 12-21-09 by

-4-

Bill of Indictment, which was within one (1) year of the proper prosecuting officer, the Adams County State's Attorney, becoming aware of the offense when the investigative file *** was referred to that prosecuting officer on 1-22-09."

¶ 20 However, defendant contends because Ella, or a person who had the capacity to legally represent Ella, discovered the offense, the State was required "to allege and prove that the charges were filed within one year of the discovery of the offense by [Ella] or one who had the legal capacity to represent [her]," rather than within one year of the prosecuting officer becoming aware of the offense. Because the State did not allege and prove as such, defendant argues the indictment was invalid on its face, requiring her sentence and conviction to be vacated. The State disagrees, asserting it pleaded the appropriate exception because neither Ella nor a person with the legal capacity to represent her had actual knowledge that defendant had committed the offense and, thus, could not have discovered the offense within the meaning of the statute. In resolving this issue, we must determine what "discovery of the offense" means within the context of section 3-6(a)(2) of the Criminal Code.

¶ 21 We review *de novo* questions of statutory construction. *People v. Campa*, 217 Ill. 2d 243, 252, 840 N.E.2d 1157, 1164 (2005).

¶ 22 The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Whitney*, 188 Ill. 2d 91, 97, 720 N.E.2d 225, 228 (1999). The best indicator of the legislature's intent is the language of the statute and its plain meaning. *People v. Blair*, 215 Ill. 2d 427, 442-43, 831 N.E.2d 604, 614 (2005). A reviewing court will "not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *People v. Boclair*, 202 Ill. 2d 89, 100, 789 N.E.2d 734, 741 (2002). In construing a statute where the same words or phrases appear in different parts, the words or phrases will be given a consistent meaning if legislative intent is not clearly expressed to the contrary. *People v. Lutz*, 73 Ill. 2d 204, 212, 383 N.E.2d 171, 174 (1978).

¶ 23 The State cites *People v. McGreal*, 4 Ill. App. 3d 312, 278 N.E.2d 504 (1971), for the proposition "discovery of the offense" requires knowledge a penal statute has been violated. In *McGreal*, the appellate court–for the first time–construed the phrase "discovery of the offense" as used in section 3-6(b) of the Criminal Code. See 720 ILCS 5/3-6(b) (West 2004) ("A prosecution for any offense based upon misconduct *** by a public officer or employee may be commenced within one year after discovery of the offense by a person having a legal duty to report such offense, or in the absence of such discovery, within one year after the proper prosecuting officer becomes aware of the offense."). In *McGreal*, the State appealed the dismissal of three counts of a four-count indictment on the basis they were barred by the statute of limitations. *McGreal*, 4 Ill. App. 3d at 315-17, 278 N.E.2d at 506-08. On April 30, 1968, the office of the commissioner of buildings (Office) began investigating allegations of perjury against McGreal, a code enforcement inspector for the city of Chicago. *Id.* at 315-16, 278 N.E.2d at 507. On September 13, 1968, the Office concluded its investigation and suspended McGreal. On July 3, 1969, a four-count indictment was returned against McGreal. When the indictment was filed, the State invoked section 3-6(b) of the Criminal Code, asserting the statute of limitations began to run on September 13, 1968, the date the investigation concluded. *Id.* at 317, 278 N.E.2d at 508. McGreal, however, claimed the

statute of limitations began to run on April 30, 1968, when the investigation into his alleged perjury commenced. *Id.*

¶ 24 In resolving the issue, the *McGreal* court had to determine whether "discovery of the offense by a person having a legal duty to report" occurred on the date the investigation commenced (April 30, 1968) or the date it concluded (September 13, 1968). (Internal quotation marks omitted.) *Id.* at 319, 278 N.E.2d at 509. After reviewing case law to ascertain the meaning of the word "discovery," and noting "offense" means a violation of a penal statute, the court concluded "discovery of the offense" within the context of triggering the section 3-6(b) statute of limitations required knowledge a penal statute had been violated by a person with a legal duty to report the offense. *Id.* at 321-22, 278 N.E.2d at 510-11. The court found discovery, if any, occurred on September 13, 1968–the date the building department commissioner, the person with a legal duty to report the offense, became aware of the offense and suspended McGreal; this was also the date the investigation concluded. *Id.* at 322, 278 N.E.2d at 511.

¶ 25 This case is distinguishable from *McGreal* because, despite the State's contention, this case involves discovery of the offense by Ella, the aggrieved person, rather than one with a legal duty to report the offense. Defendant asserts "discovery of the offense" occurred as early as September 2008 (when Niewohner replaced defendant as Ella's power of attorney), but no later than December 5, 2008, when Ella informed Detective Liesen she had not given defendant permission to write certain checks and, thus, defendant asserts the latest date the State could charge defendant was December 5, 2009. We agree.

¶ 26 The State argues discovery of the offense could not occur until Ella, or one who had the legal capacity to represent her, became aware defendant knowingly and illegally misappropriated over $15,000 of Ella's money, in breach of her fiduciary relationship. See 720 ILCS 5/16-1.3(a) (West 2004) (The offense of unlawful financial exploitation of an elderly person requires a person whom (1) stands in a position of trust or confidence with the elderly person to (2) knowingly and by deception or intimidation (a) obtain control or (b) illegally use the assets of the elderly person.). However, we hold it is not necessary for an aggrieved person to have knowledge another has fulfilled every element of an offense as defined in the Criminal Code. Whether an actual offense has been committed is a question of fact for the trier of fact.

¶ 27 In this case, Ella knew when she spoke to Detective Liesen on December 5, 2008, defendant had written checks from her account which she had not authorized. Detective Liesen specifically asked Ella whether she had authorized certain checks or given defendant permission to pay someone else's bills. Ella responded she had not. This was more than mere suspicion. As of December 5, 2008, Ella discovered defendant misappropriated her money and, thus, had knowledge an offense had been committed.

¶ 28 Because we find Ella–the aggrieved person–discovered the offense on December 5, 2008, the State was required to commence its prosecution no later than December 5, 2009. It failed to do so. The indictment and subsequent information were filed by the State after the extended statute of limitations as intended in section 3-6(a) of the Criminal Code had expired. As a result, we vacate defendant's conviction and sentence.

¶ 29                                          B. Statutory Credit

¶ 30     Because we vacate defendant's conviction and sentence, we need not address whether she is entitled to statutory credit for time served in pretrial custody (see 725 ILCS 5/110-14 (West 2004)).

¶ 31                                          III. CONCLUSION

¶ 32     We vacate defendant's conviction and sentence.

¶ 33     Vacated.

¶ 34     JUSTICE POPE, dissenting.

¶ 35     Ella Stathakis is the "aggrieved person" for purposes of section 3-6(a) of the Criminal Code. 720 ILCS 5/3-6(a) (West 2004). That section provides for an extension of the statute of limitations for theft involving a breach of a fiduciary duty. The one-year extension runs from the time an aggrieved person discovers the offense or, in the absence of such discovery, within one year after the proper prosecuting officer becomes aware of the offense. Ella did not discover this offense and, therefore, I disagree with the majority's application of the statute to this situation. In reality, Officer Liesen discovered the offense after interviewing Ella, the defendant, and obtaining bank records for several different accounts. Liesen turned his reports over to the Adams County State's Attorney in January 2009 and, thus, in my opinion, the statute of limitations did not expire until January 2010. Because defendant was indicted in December 2009, I would find the prosecution timely. Accordingly, I dissent.