Commonwealth *v.* Claiborne, Appellant.

Argued October 13, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Ivan Michaelson Czap,* with him *Leslie P. Hill* and *Robert N. C. Nix,* for appellant.

*A. Leon Higginbotham, Jr.,* Assistant District Attorney, with him *Michael von Moschzisker,* First Assistant District Attorney, *Samuel Dash,* Assistant District Attorney and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY RENO, J., December 29, 1953:

Appellant was convicted of drunken driving. His defense was that he was neither drunk nor driving.

On his appeal he contends (a) that the court below abused its discretion in refusing his motion for a continuance; (b) that his trial was unfair and the conduct of the trial judge prejudicial; and (c) that the evidence does not support the verdict.

Due to an unfortunate misunderstanding between appellant's counsel and an assistant district attorney, shared perhaps by the trial judge, appellant was compelled to stand trial when all of his seven witnesses were absent.[1] The record is not so clear and explicit that a finding of abused discretion can be predicated upon it. Nevertheless, the trial judge knew that appellant's witnesses were unavailable (Record p. 22a) and he should have proceeded in the light of that information, dispassionately and equanimously; and considerately, as when one finds, not to say places, another in jeopardy. Instead, he "wholly lost sight of the essential requirement that justice must be judicially administered": *Carr v. Mundorf*, 311 Pa. 214, 216, 166 A. 789.

Unless this opinion is expanded to inordinate lengths, the judicial misconduct revealed by the record must be summarized for the most part, and several typical episodes must suffice to illustrate the general tenor of the trial.

The factual issue was: Who ran into whom, and was appellant under the influence of intoxicating liquor. Herbert Gottleib alleged that appellant drove his car into Gottleib's rear fender. Appellant claimed that his automobile was parked at the curb in front of his residence while he was repairing the radio in it and that in that position Gottleib's car collided with his. He denied that he had drunk intoxicating liquor.

---

[1] At the oral argument we were informed that appellant's witnesses would have corroborated his version.

When Gottleib, the first Commonwealth's witness, testified that appellant had driven into his rear fender and, during an ensuing altercation, appellant had gone "back in the car and grabbed a large screw driver and threatened to stab my father-in-law with it," the trial judge, no objection having been raised by the Commonwealth, peremptorily halted cross-examination by the statement: "This does not relate to the charge here. There is no need to cross-examine him. The charge is operating an automobile while under the influence of intoxicating liquor. So far there has been no testimony about that." The jury might have properly inferred that the screw driver incident was some evidence of intoxication and appellant's counsel was undoubtedly privileged to dispel that inference by cross-examination. Indeed, the trial judge himself drew that inference when in his charge he referred to the incident and stated, "That might indicate something about his condition, if you believe that testimony." Yet he interdicted the attempt of appellant's counsel to refute it.

When the same witness stated that he noticed in what position appellant's bumper was after the collision, the trial judge again, without objection registered by the Commonwealth, arrested the cross-examination by declaring: "I am awfully sorry to have to stop you, but this is irrelevant to the charge here. All of this is irrelevant to the charge." Yet, since appellant contended that he was *not* driving, he was undoubtedly privileged to show on cross-examination whether his front bumper carried marks of a recent collision.

When another witness testified to the screw driver incident and also that appellant was under the influence of intoxicating liquor, appellant's counsel chose not to cross-examine, a subtle trial strategy frequently employed by counsel who do not wish to emphasize damaging testimony by its repetition. But the trial

judge remarked: "This is the first related testimony and now you say you don't want to ask him anything", thereby accentuating the omission and doubtless destroying the effect of counsel's adroit maneuver.

A police surgeon, to whose testimony further reference will be made, was asked on cross-examination: "Q. Doctor, did you notice any other irregularity about his physical condition? For instance, did he complain to you that he had been hit on the head? A. No, sir. He only told me that he had been drinking whiskey with beer chasers. That is the only conversation I had with him, excepting requesting him to walk a straight line. He didn't mention anything to me at all about injuries." Whereupon the trial judge interjected: "Being hit on the head would not give a person an alcoholic breath, you see. People could save a lot of money if they could get drunk that way. They would just go around asking people to hit them on the head, that is all." At another point, when appellant testified he was "working under the dashboard", repairing the radio, at the moment of the collision, the trial judge exclaimed: "He was under, but the question is what was he under. The charge is that he was under the influence of intoxicating liquor. Now he says he was under the dashboard or something like that." Whether intended as withering sarcasm or sardonic humor, and judicial humor rarely rises above the dismal, the comments could only cast stinging ridicule upon perfectly legitimate questions and answers, and irreparably prejudiced the jury against appellant. "An over speaking judge is no well-tuned cymbal": Bacon, Essay "Of Judicature".

These caustic and scathing, and, for the most part, frivolous interjections, and others to which we shall not refer, delineate the tawdry pattern of the trial. They offended the most rudimentary sense of "justice

judicially administered". Perhaps none constitute reversible error but taken together they indicate an unjudicial and trifling approach to a serious legal problem, serious at least to appellant, as his sentence proves.

Howbeit, unquestionably the trial judge's merciless cross-examination of appellant was clear reversible error. As stated the police surgeon testified that appellant was under the influence of intoxicating liquor when he examined appellant at the police station. On his direct examination appellant vehemently denied the charge, testifying that he had not consumed any liquor. He was never cross-examined by the assistant district attorney; that function was completely taken over by the trial judge, and before his direct examination was concluded the trial judge examined appellant several times at length. At one point, the examination was as follows: "By the Court: Q. *This whole case got into court because your car ran into the back of the other car.* It is charged that when that happened and you were asked for your license card, you went and got a screw driver and you wanted to attack someone. Don't you remember doing that? A. No, sir. Q. You don't remember doing that? A. No, sir. That is not true, your Honor. Q. You don't remember doing it? A. That is not true. Sure, I can't remember it because it isn't true. Q. Do you remember the doctor examining you? A. I remember the doctor examining me, yes. Q. All right. You do remember that? A. Yes, I remember the whole arrest. Q. I see." (Emphasis added.) Manifestly, the first question was highly improper and reprehensively prejudicial; it assumed the truth of the Commonwealth's case, namely, that appellant drove into the other car when all through the trial, appellant alleged that his own car was run into.

Again the trial judge asked: "Q. Didn't some neighbor grab hold of you and restrain you? A. No, sir. No

neighbor came out. Q. I say didn't some neighbor grab hold of you and restrain you? A. No. Q. Well, it is for the jury to decide who is telling the truth. You think they made this up? A. *I swore to tell the truth.* Q. *A lot of people swear on that Bible?* A. Yes, but I don't do that." (Emphasis added.) Such expressions of incredulity, not to say cynical mockery, cannot be tolerated if the right of *trial by jury* shall remain inviolate.

After appellant testified that the engine of his automobile was not running at the time of the collision, the trial judge asked: "Q. We are not concerned about your car. We are concerned about your condition. Had you been drinking? A. No, sir. I had not. Q. Here is a police surgeon. He has nothing against you? A. That is right. Q. He had no collision with your car. He is just a public official, a medical man, who was called upon to examine you, just as he examines other people. He said you told him that you had been drinking whiskey with beer chasers? A. No, sir. Q. That is all on his notes. Are you denying that? A. Yes, sir. I do deny that, your Honor, to the death of me. I would swear that before any court. Q. *You can swear all day long, but that is what he testified to.* A. That is what he testified to, but it is absolutely wrong. Q. You are denying it? A. I am denying it, yes, for a fact. Q. You are saying he told a falsehood? A. That is a falsehood, your Honor. Q. *All right, go ahead and make it as strong as you can.* A. I am not making it strong, if you please. I am only telling you the truth. Q. The doctor's testimony is a falsehood? A. It is a falsehood. Would you let me tell you how he examined me? Q. You can tell that later. But that part you say is a falsehood? A. It is a falsehood. He never asked me any questions at all." (Emphasis added.)

And finally, when appellant testified that he had only used his ignition key when he parked his car at the curb on the night before the collision, the trial judge interposed these questions: "Q. *Your statement about this is just as true, is it, as your statement that you had nothing to drink?* A. That is a true statement, your Honor. Q. *It is as true as the other one, is it?* A. It is the truth. Q. All right. Go ahead. A. I am only speaking the truth. Q. *All right. You say that everyone else is lying and you are the only one telling the truth."* (Emphasis added.)

Obviously, the judge's questions pronounced a definite judgment upon appellant's credibility, a judgment which the jury would naturally be loath to reject. Clearly, the judge solemnly pronounced the police surgeon's testimony superior to appellant's notwithstanding that police officers are fallible, can be mistaken, share common prejudices, and have been known to commit perjury. The credibility of police officers is to be judged by the same standards applicable to all witnesses. They are supposed to be disinterested witnesses, as the trial judge suggested in his charge, but whether or not they are so in fact is a jury question. Cf. *Com. v. Brown,* 309 Pa. 515, 164 A. 726. We have not embraced "the police state" and the testimony of a police officer is not one of the eternal verities.

All our cases unqualifiedly condemn, and sometimes in harsh terms, the trial judge's deprecatory, intimidating and disdainful attitude. "It is not the province of a trial judge to declare that one witness's testimony destroys another's": *Hodgson v. Bigelow,* 335 Pa. 497, 521, 7 A. 2d 338. A defendant "has a right to a trial by a fair and impartial jury whose consideration of his cause is not influenced by any language of the court which would create resentment or prejudice against him": *Monier v. Phila. Rapid Transit Co.,* 227

Pa. 273, 275, 75 A. 1070. "[T]he language of the court was without justification, and its necessary effect was to prejudice the jury against the witness and against her testimony, upon the credibility of which defendant's whole case depended": *Haymarket B. & L. Assn. v. Smigelsky,* 321 Pa. 337, 340, 183 A. 802. Where a defendant is cross-examined so severely by a judge that it is apparent he had no chance thereafter with the jury, a new trial will be ordered, even though the trial judge endeavored to correct it in his charge. *Sarshik v. Fink,* 292 Pa. 256, 141 A. 39.

"[T]he judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law": *Quercia v. U. S.,* 289 U. S. 466, 469, 53 S. Ct. 698. "Upon him rests the responsibility of striving for that atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding": *Glasser v. U. S.,* 315 U. S. 60, 82, 62 S. Ct. 457, 470. He must see to it that trials are conducted in an orderly manner and kept within the bounds of decency and good conduct. 53 Am. Jur., Trial, §74. "The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence. Judges should refrain from extended examination of witnesses; they should not, during the trial,

indicate an opinion on the merits, a doubt as to the witnesses's credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them": *Com. v. Myma*, 278 Pa. 505, 508, 123 A. 486.[2]

" '[T]he first and most essential element in a jury trial is a wise, learned, impartial and competent judge' . . . A litigant who is denied this 'essential element' is deprived of 'due process of law.' . . . A judge forfeits respect when he exercises his authority with arrogance": *DiBona v. Phila. Trans. Co.*, 356 Pa. 204, 216, 51 A. 2d 768.

In the opinion, prepared under our Rule 43, the trial judge expressed satisfaction that appellant, under a threat of a prosecution for perjury, apologized to the police surgeon and shook his hand. Of course, faced with that serious charge, emanating from the fountain of mercy, appellant paid his humble obeisance to that awesome power. But his gracious gesture was lamentably futile; he was sentenced to six months to one year in the county prison, after a trial in which he had not the barest chance with the jury.

Judgment and sentence reversed and a new trial awarded.

---

[2] This, too, is the view of the Pennsylvania Bar Association. In its Canons of Judicial Ethics, LV Reports of Pennsylvania Bar Association, 365, 368, it declared: "15. A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.