413 A.2d 1094

**COMMONWEALTH of Pennsylvania**

v.

**Wretha Sue FARRAR, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1979.

Filed Oct. 26, 1979.

Petition for Allowance of Appeal Denied May 6, 1980.

Robert E. Campbell, Gettysburg, for appellant.

Samuel E. Teeter, Assistant District Attorney, Gettysburg, did not file a brief on behalf of the Commonwealth, appellee.

Before SPAETH, HESTER and MONTGOMERY, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for receiving stolen property. 18 Pa.C.S.A. § 3925 (Purdon's 1973).

In March 1974, appellant, her husband, Henry Farrar, and her 15 year old son, Joseph Minor, entered the home of Lawrence Hogan in Rockville, Maryland, without his permission and took two antique china closets and one antique table. In September 1974, the Farrars moved to Pennsylvania, bringing the stolen property with them. N.T. at 11. On August 6, 1976, a Pennsylvania state trooper conducted a search of appellant's home pursuant to a search warrant that specified that there was probable cause to seize a two-door dark wood china closet with curved glass, sides and front. The trooper seized two china closets—an oak china closet with two doors, and a dark wood china closet with one door and curved glass, sides and front. On August 14, the trooper returned to appellant's home with a search warrant listing twenty items to be searched for and seized. The trooper was accompanied by several private citizens, among them Lawrence Hogan's sister, Mrs. Gladys Campbell. Mrs. Campbell noticed a table that she believed was one of the items that had been taken from Mr. Hogan's house. Although this table was not one of the items listed on the search warrant, the trooper seized it. On August 17, a complaint was issued against appellant, and this was followed by an information charging, in the first count, that

"on or about August 6, 1976," appellant did "receive, retain or dispose of" the two china closets and one table, knowing that they had been stolen from Mr. Hogan, and in the second count, that she had corrupted the morals of her minor son Joseph.

At the beginning of the trial, the District Attorney explained the Commonwealth's theory of the case twice, the second time at the request of the trial judge, who then told the jury that he understood the Commonwealth's theory to be that appellant was guilty of receiving stolen property because while in Pennsylvania she had retained property that had previously been stolen in Maryland. After making these comments, the trial judge told the jury that he was not trying to influence their verdict. N.T. at 4, 5. During the trial, appellant's son and Mrs. Campbell testified that the Hogan house had been broken into and the items later seized in appellant's home were missing. N.T. 14, 15, 35. Appellant's counsel objected to Mrs. Campbell's testimony because she was not a resident or owner of the Hogan house, but the court overruled his objection. N.T. 33. After the Commonwealth finished its case, the court sustained a demurrer to the charge of corrupting the morals of a minor. It then granted the Commonwealth leave to amend the information and charge that the offense of receiving stolen property had occurred "at or about September 1, 1974, to August 6, 1976," instead of "on or about August 6, 1976." N.T. 81–83. The jury found appellant guilty of this charge, and after dismissing her post-trial motions, the judge sentenced appellant to two to four months in prison, to pay costs, and "[i]f there [is] any property unlawfully in the hands of [appellant], she is directed to make restitution to the party or parties entitled thereto" The judge recited the fact that the two china closets and table "were recovered . . . by the police authorities [and] are now in the hands of their rightful owner." N.T. 8. The judge also stated:

THE COURT: The Court has given this case careful consideration. As indicated a few moments ago, we re-

viewed the record last night and previously. We have given weight and consideration to grounds which are designated by our appellate courts when considering the matter of probation, which counsel for the Defendant is now urging, should be given in this case. We find none of the grounds set forth in the Act of Assembly which justify probation.

We understand that this Defendant has one child by her second marriage. That child is eight years of age, did you say, Mr. Campbell?

MR. CAMPBELL: Seven.

THE COURT: Seven years of age. Is that the only child living at home with the Defendant at this time?

MR. CAMPBELL: Yes.

THE COURT: We feel that under all the facts and circumstances a jail sentence is required in this case. We decline to enter an Order of probation because we feel that to do so would depreciate the seriousness of the offense which the defendant committed. We feel further that a jail sentence is justified to deter the Defendant and others from committing the criminal acts such as the Defendant committed in this case. We're also mindful, very mindful, of the fact, according to the evidence, of Mrs. Farrar's son, who was either 14 or 15 years of age when he participated in a burglary in Maryland, which led to the offense charged in Adams County, Pennsylvania, namely; retaining the possession in Adams County, Pennsylvania, of goods stolen by means of a burglary in Maryland and in which, according to the testimony of Mrs. Farrar's son, she physically participated as well as himself and her present husband, who is the stepfather of the Defendant's son, Joseph Minor, now 18 years, I am advised.

Another reason for the Court declining probation is that we're convinced that the conduct of the Defendant, Mrs. Farrar, in this case, was a bad influence on her boy, Joseph Minor, who was either 14 or 15 years of age when the burglary was committed in Maryland and when the

stolen goods were brought into Adams County, Pennsylvania, by the Defendant and her husband. At that time, the minor boy, Joseph Minor, resided with his mother in her home in Adams County. We feel that by reason of the bad example set by the mother in this case by her criminal conduct, it may well be that her young son was encouraged to engage in conduct which violated the criminal laws of Pennsylvania and which led to the questioning of the boy by the law enforcement officer of Adams County, Pennsylvania. At that time, during the questioning, according to the record and the testimony of Joseph Minor, the boy, he was asked by the Adams County authorities whether he had engaged in any other criminal activities other than the activities they were then investigating and which had nothing to do with this case. In answer to the question asked by the Adams County authorities as to whether he had engaged in any other criminal conduct, he frankly stated that he had and they asked him when and where, and he then gave a truthful answer and revealed for the first time how the stolen goods came into Adams County, Pennsylvania and were retained in this County in the home of the Defendant, Mrs. Farrar, who had refinished some of the stolen goods, and as I recall the testimony, had them on display or was using them in her own dining room.

Sentencing Hearing, N.T. 5, 6, and 7.

–1–

■ Appellant's first argument is that the lower court did not have jurisdiction because the crime occurred before she and her family moved to Pennsylvania. In her view, receiving stolen property is not a continuing offense; once she received and retained the stolen property in Maryland, the offense terminated.

Section 3925 reads as follows:

A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has

probably been stolen, unless the property is received, retained or disposed with intent to restore it to the owner.

Although in a different context, we have suggested that the legislature's inclusion of a prohibition against retaining and disposing of stolen property makes this offense "ongoing." *Commonwealth v. Ellis*, 233 Pa.Super. 169, 173 n. 3, 335 A.2d 512, 515 n. 3 (1975) (whether a police officer had probable cause to arrest the defendant for receiving stolen property when the officer saw him carrying what appeared to be an adding machine at 2:00 a. m. in a high crime area). This accords with the view of two other state courts interpreting comparable statutes. *See Williams v. Superior Ct. of Los Angeles County*, 81 Cal.App.3d 330, 146 Cal.Rptr. 311 (1978) (concealment of stolen property may be continuing offense if facts demonstrate that continued concealment is purposeful); *State v. Ellerbe*, 217 La. 639, 47 So.2d 30 (1950) (concealment and possession of stolen property are continuing offenses). Since appellant retained stolen property in Pennsylvania,[1] the lower court had jurisdiction to try her.

–2–

■ Appellant's second argument is that the statute of limitations prevents this prosecution, since she committed the offense when she first received and retained the property in March 1974, more than two years before the present prosecution began. However, we have just concluded that appellant's offense was a "continuing" one, which did not terminate until the stolen property was taken from her in August 1976.

–3–

Appellant's third argument is that the two searches of her home resulted in unconstitutional seizures of evidence.

1. Appellant argues that one consequence of holding "retaining" stolen property a continuing offense is that a person could be charged with it 50 years after he initially received the property, in which case defense to the charge would be difficult. Appellant's Brief at 9. However, prosecution might be even more difficult.

First, appellant argues that the dark wood china closet with one door and curved glass, sides and front should not have been introduced into evidence because the warrant specifically described a two-door dark wood china closet with curved glass, sides and front. The Supreme Court has said that police should interpret search warrants in a "common-sense" fashion. *Commonwealth v. Matthews,* 446 Pa. 65, 73, 285 A.2d 510, 514 (1971). In that case, the Court said that the lower court did not err in allowing the introduction of a kitchen knife seized on the basis of a search warrant specifying "a pocket knife." 446 Pa. at 73, 285 A.2d at 514. Likewise, here the item seized was very similar to that described in the warrant. Next appellant argues that the second search, which resulted in the seizure of the table, was a "fishing expedition to enable the officers to seize anything that an alleged victim might identify." Appellant's Brief at 12. Since we are only concerned with the admissibility of the table identified by Mrs. Campbell, the activities of the other people who accompanied the state trooper on the search are irrelevant. Before Mrs. Campbell entered the house, the trooper told her to tell him if she noticed anything that had been missing from the Hogan house. N.T. 44, 44. The trooper testified that he was not looking for any item not identified in the warrant, N.T. 66, but that since those items did not have serial numbers, he needed help in identifying them, N.T. 64. Since Mrs. Campbell was present in order to help the trooper execute the warrant, her presence in the Farrar house was not an undue invasion of their privacy. Therefore, the information she transmitted to the trooper was not tainted and he could properly seize the table, as being within his plain view. In *Commonwealth v. Adams,* 234 Pa.Super. 475, 479, 341 A.2d 206, 208 (1975), we said that an item not listed in a search warrant may be seized if an officer lawfully in a position to see the item sees it inadvertently. Here, the trooper was lawfully on the premises by virtue of the search warrant. Though the trooper's discovery of the table was not inadvertent in one sense, because Mrs. Campbell pointed it out to him, *see Commonwealth v. Lassiter,* 457 Pa. 582, 321 A.2d 902 (1974);

*Commonwealth v. Davenport*, 453 Pa. 235, 308 A.2d 85 (1973), it was inadvertent in another sense, because he had no idea it would be there before he entered the house. *See United States v. Stegmaier*, 397 F.Supp. 611 (D.C.1975), *affirmed*, 538 F.2d 321 (3 Cir. 1976) (where police officer and bank official were properly in motel room, bank official's discovery of stolen traveler's checks justified officer's seizure of them).[2]

–4–

■ Appellant's fourth argument is that the trial judge's opening comments, by emphasizing the Commonwealth's theory, denied her right to a fair trial and due process. In support of this argument appellant cites *Keating v. Belcher*, 384 Pa. 129, 119 A.2d 535 (1956) (alleged prejudice of judge's charge not found), *Commonwealth v. Lanza*, 228 Pa.Super. 300, 323 A.2d 178 (1974) (judge's questioning of both sides' witnesses to elicit information about crime not prejudicial), and *Commonwealth v. Claiborne*, 175 Pa.Super. 42, 102 A.2d 900 (1953) (where judge restricted defendant's cross-examination of Commonwealth witnesses, made negative comments about defendant's testimony, extensively cross-examined defendant, and said that another witness's testimony was superior to that of defendant, judge's conduct was prejudicial and justified new trial). We have concluded, however, that none of these cases helps appellant, for although the judge did emphasize the Commonwealth's theory of the case, he did not do so in a manner that prejudiced

2. This case is distinguishable from *Commonwealth v. Bowers*, 217 Pa.Super. 317, 274 A.2d 546 (1970). There, a police officer legitimately on the premises came upon a television set, which was not listed in a search warrant, but which he believed was stolen. Unable to positively identify the set, the officer called a local television repairman, who came and removed the back of the set, enabling the officer to determine that the set's serial number matched that of a stolen set. The officer later returned with a warrant for the set. We said that the set was not originally in "plain view" of the officer because he could not ascertain that it was stolen merely by viewing it, but instead had to call the repairman. Here, the state trooper was immediately able to ascertain with 'reasonable' certainty that the table was contraband because of the presence of Mrs. Campbell.

appellant. The judge told the jury that appellant "has entered a plea of not guilty, which means she denys [*sic*] that charge," and went on to say that he was "not in any way trying to influence the jury as to what your verdict shall be" but was only "explain[ing] to the jury at the outset what the issues are that they are to decide." N.T. 5–6.

## –5–

■ Appellant's fifth argument is that the lower court should not have permitted the Commonwealth to amend the information to show that the charge of receiving stolen property occurred from September 1974 through August 6, 1976 instead of just "on or about August 6, 1976." Appellant's theory is that this amendment charged an additional offense and did not fix the date of the crime with reasonable certainty. However, the amendment did not charge an additional offense, for as we have just held, the offense was a continuing one. *See* Pa.R.Crim.P. 229. Given that the offense was a continuing one, the dates given in the amendment specified with reasonable certainty when the offense occurred.

## –6–

Appellant's sixth argument is that Mrs. Campbell should not have been permitted to testify about the burglary in Maryland or the items missing from her brother's house since she was not the owner of the house and did not originally report the burglary. As a corollary to this argument, appellant argues that her constitutional right to confront witnesses was infringed when the prosecutor did not call Mr. Hogan to testify as to the burglary and the items missing.

■ Appellant cites no authority in support of her argument. It seems, however, to be based on the notion that if each of several persons knows something, a party is required to call that person who knows it "best." There is no such evidentiary principle. The "best evidence rule" applies only to the proof of writings. (What is meant by a "writing" is a

question not at issue here.) IV Wigmore on Evidence §§ 1172–74 (Chadbourn ed. 1972); McCormick on Evidence § 230 (Cleary ed. 1972). If each of several persons knows something, in the sense of being competent to testify that the event in question occurred, a party may call any or all of them, as considerations of trial strategy suggest. Mrs. Campbell's testimony may be summarized as follows.

 The house was Mrs. Campbell's family home. She was born and raised in it, and lived right next door. N.T. 32. When their mother died, six years before the trial, her brother inherited the house and furniture in it. N.T. 37. Mrs. Campbell was familiar with the two china closets and table in question. One china closet had been in the house since before she was born, and the other more than thirty years. N.T. 35–36. The table had been the family dining room table for forty years. N.T. 39, 45–46. She was able to give a detailed description of each item. N.T. 35–36, 39. She remembered that each had been in the house before it was broken into early in 1974. N.T. 33, 35. Mrs. Campbell's brother had had to move his business, which had been across the street, and he was therefore living temporarily in another town. N.T. 34. He returned to the house on weekends, and asked Mrs. Campbell to keep an eye on it while he was away. She had a key to it, and checked it every two or three days. Her children would cut through the property on their way to church, and it was they who discovered that the house had been broken into. N.T. 34. She found that "a lot of things had been taken." N.T. 35. Although she did not make an inventory of what had been taken—her brother did that, N.T. 42—the next time she saw the two china closets was in August, 1976, in the police station, N.T. 40; she next saw the table when she was in appellant's home with the state trooper, N.T. 40–41.

This testimony was sufficient to show that Mrs. Campbell was competent to testify that her brother's house had been burglarized, and the two china closets and table taken from it.

Appellant's seventh, and final, argument is that in sentencing her the trial judge improperly "[took] into consideration facts concerning a burglary in Maryland for which [she] was never charged and facts concerning corruption of morals (which charge was discussed on demurrer) . . ." Appellant's Brief at 16. The trial judge's comments in imposing sentence have been quoted above, at 3–4. The judge did refer to "a burglary in Maryland," in which appellant's minor son Joseph, appellant, and her present husband "physically participated." Also, the judge did say that he was "declining probation" because "we're convinced that [appellant's] conduct . . . was a bad influence on her boy." The judge added that "by reason of the bad example set by [appellant] in this case by her criminal conduct, it may well be that her young son was encouraged to engage in [criminal] conduct."

–a–

In *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979), we had occasion to summarize the responsibility of a judge when imposing sentence:

Under the Pennsylvania system of indeterminate sentencing, "[i]mposition of a proper sentence is a matter vested in the sound discretion of the trial court, whose determination is to be respected unless it constitutes a manifest abuse of discretion." *Commonwealth v. Valentin*, 259 Pa.Super. 496, 499, 393 A.2d 935, 937 (1978); *see Commonwealth v. Knight*, 479 Pa. 209, 212, 387 A.2d 1297, 1299; *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). In imposing sentence the court "must not overlook pertinent facts, disregard the force of the evidence, commit an error of law . . . or inflict punishment exceeding that prescribed by statute." *Commonwealth v. Knight, supra*, 479 Pa. at 212, 387 A.2d at 1299; *see Commonwealth v. Lee*, 450 Pa. 152, 299 A.2d 640 (1973). The court must consider the character of the defendant and the particular circumstances of the offense in light of

the legislative guidelines for sentencing, and must impose a sentence that is the minimum sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. *See* The Sentencing Code, Act of Dec. 30, 1974, P.L. 1052, No. 345, 18 Pa.C.S. § 1321(b) (Supp.1977); *Commonwealth v. Knight, supra; Commonwealth v. Riggins, supra* [474 Pa. 115, 377 A.2d 140].

In *Commonwealth v. Riggins, supra,* the Supreme Court of Pennsylvania held that to further compliance with these principles, the lower court must state on the record its reasons for the sentence imposed. *See Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Bolyard,* 256 Pa.Super. 57, 389 A.2d 598 (1978). Thus in *Commonwealth v. Kostka, supra,* the Court vacated the sentence and remanded for resentencing because "the trial judge failed to articulate reasons for the sentence imposed reflecting *'weight' was accorded the statutory guidelines for sentencing."* 475 Pa. at 90, 379 A.2d at 887. (emphasis added)

*Id.,* 265 at 311, 401 A.2d at 1225–26.

From this statement it may be seen that the first question that we must decide is whether, in considering the "burglary in Maryland" and the "example" appellant had set for her son, the judge was considering "facts" that were "pertinent" in that they illuminated either "the character of the defendant" or "the particular circumstances of the offense."

At the trial, appellant's minor son described how the two china closets and table had been taken from the Hogan house. In March of 1974 he was living with appellant and his stepfather in Rockville, Maryland, a few blocks from the Hogan house. N.T. 13. One night, "real late," he, his stepfather, and appellant went to the house, and he entered through a window. The door was boarded up, inside and outside. He pulled off the inside boards, while his stepfather pulled off the outside boards. N.T. 14. His stepfather and appellant went inside and after they had all "looked around for awhile," N.T. 15, they took the two china closets

and the table, *id.* His stepfather had parked in the parking lot of the church behind the house. N.T. 25. They took the closets and table to their house, "cleaned them up and . . put [them] in the dining room of my mother's [house]." N.T. 15. When they moved to Pennsylvania, in September 1974, the china closets and table were taken along; he helped load and move them. N.T. 16.

It is true that appellant was never charged with burglary of the Hogan house. It is also true that a judge may not sentence a defendant as a dealer in marijuana when the defendant has been found not guilty of that offense. *Commonwealth v. Albert*, 264 Pa.Super. 390, 399 A.2d 1106 (1979). *See also Commonwealth v. Wicks, supra* (sentence vacated where stated reason for sentence was that defendant had twice been on probation; in fact defendant had only once been on probation; *Commonwealth v. Smith*, 250 Pa. Super. 537, 378 A.2d 1278 (1977) (unsubstantiated statement that defendant was part of drug connection could not sustain sentence). It does not follow, however, that the sentencing judge could not consider how the two china closets and table had been acquired by appellant.

The point of *Albert, Wicks,* and *Smith* is that the sentencing judge may not act on the basis of a "fact" contradicted or unsupported by the record. Here, the judge's statement that appellant had "participated" in a "burglary in Maryland" was supported by the record; it fairly summarized the uncontradicted testimony of appellant's son.

In addition, the son's testimony was pertinent to the circumstances of the offense. While appellant was charged only with retaining in Pennsylvania property that she knew had been stolen, the evidence that she had herself participated in stealing the property could be considered by the judge as aggravating the seriousness of her offense in retaining it.

Nor are we persuaded by appellant's argument that the sentencing judge should not have considered that she had been a "bad influence" on her son and had set him a

"bad example." The premise of the argument, apparently, is that by making these statements the sentencing judge was contradicting himself: Since as trial judge he had sustained appellant's demurrer to the charge of corrupting her son's morals, how could he as sentencing judge say that she had set her son a bad example? However, appellant's demurrer was sustained, not because the judge had found that appellant did not set her son a bad example, but rather because the information alleged that the corruption offense had occurred "on or about August 6, 1976." By then, the son testified, he was no longer living with his mother and stepfather; he had moved from their house in July of 1976, and was living with his natural father in Maryland. N.T. 17, 23. So far as August 6, 1976, was concerned, he admitted that appellant had not encouraged or asked him to commit any crime. N.T. 23. It is true, as mentioned above, that as trial judge, the judge permitted the Commonwealth to amend the date alleged in the information; but the amendment was only as to the charge of receiving stolen property, N.T. 83.

–b–

The second question is whether, in deciding against a sentence of probation, the sentencing judge " 'articulate[d] reasons for the sentence imposed reflecting [that] "weight" was accorded the statutory guidelines for sentencing.' " *Commonwealth v. Wicks, supra, quoting Commonwealth v. Kostka, supra.*

The Sentencing Code, *supra,* provides several possible dispositions of a criminal defendant, including probation, total confinement, and partial confinement. With respect to probation, the Code provides that the sentencing judge shall accord weight to twelve different, specifically identified, factors. *Id.* § 1322. The seventh of these factors is:

(7) The defendant has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the present crime.

Here, the comments of the sentencing judge show that he found that appellant *did* have a history of prior criminal activity, and had *not* led a law abiding life. Those findings militated against a sentence of probation. They were nevertheless warranted, given the son's testimony that for two years before the charge of retaining stolen property was brought against appellant, she had had the property in her house, and had regularly used it as though it were hers and her husband's, despite having participated in its theft.

Given this evidence, the sentencing judge could in his discretion decide not to impose a sentence of probation. This is the more apparent when one considers other factors that the sentencing judge should consider in deciding whether to impose a sentence of probation, in particular, factors (1) through (5):

(1) The criminal conduct of the defendant neither caused nor threatened serious harm.

(2) The defendant did not contemplate that his conduct would cause or threaten serious harm.

(3) The defendant acted under a strong provocation.

(4) There were substantial grounds tending to excuse or justify the criminal conduct of the defendant, though failing to establish a defense.

(5) The victim of the criminal conduct of the defendant induced or facilitated its commission.

Sentencing Code, *supra*, § 1322.

Here, it is true that appellant's *retention* of the stolen property neither caused nor threatened serious harm. However, the evidence of how she had *acquired* the property disclosed some threat of serious harm, for even though the Hogan house was boarded up, whenever a house is broken into and property taken from it, some danger is created that the owner, or a neighbor, or the police may arrive, and harm ensue. In any event, if one puts aside factors (1) and (2), still, factors (3), (4), and (5) militated against a sentence of probation, for in acquiring and retaining the two china closets and the table, appellant acted in a calculated manner,

for personal gain. No evidence suggests any provocation, excuse, or justification.

—c—

Having decided not to impose a sentence of probation, the sentencing judge "was next obliged to consider whether total confinement as opposed to partial confinement was appropriate." *Commonwealth v. Wicks, supra,* 265 Pa.Super. at 310, 401 A.2d at 1226. The third, and final, question, therefore, is whether in deciding to impose a sentence of total confinement instead of partial confinement (work release), the sentencing judge properly exercised his discretion.

In imposing sentence, the judge stated that "a jail sentence [was] justified," Sentencing Hearing, N.T. 6, for three reasons: probation "would depreciate the seriousness of the offense"; "to deter [appellant] and others"; and because appellant had involved her son in the burglary. *Id.*

 It may be granted that a fuller statement of reasons would have been desirable. Section 1325 of the Sentencing Code provides:

> The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:
>
> (1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;
>
> (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or
>
> (3) a lesser sentence will depreciate the seriousness of the crime of the defendant.
>
> 18 Pa.C.S. § 1325 (Supp.1977)

Upon imposing a sentence of total confinement, the sentencing judge must do more than merely echo one of these requirements. "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and

disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971). So with the Sentencing Code. The responsibilities it imposes on the sentencing judge do not fade away and disappear upon utterance of the formula that "a lesser sentence would depreciate the seriousness of the crime." The judge must state, with reference to the record, why he believes that would be so. Only thus will the "appellate courts [be enabled] to ascertain whether the sentence imposed was based upon accurate, sufficient and proper information. *Commonwealth v. Riggins, supra,* 474 Pa. at 131, 377 A.2d at 148.

■ Nevertheless, in the circumstances here we do not believe that the judge's failure to make such a statement warrants a remand for resentencing. In the first place, the judge did not only say that "a lesser sentence would depreciate the seriousness of the crime." He also referred to other factors, in particular to appellant's involvement of her son, which did indeed aggravate the criminality of appellant's conduct. In this regard, it should be noted that the son also testified that he had committed a considerable number of thefts while living with appellant and his stepfather, which he had confessed to the Pennsylvania authorities. N.T. 19–22, 26–27. The sentencing judge was therefore justified in saying that appellant had been a "bad influence" on her son. In the second place, when the son's testimony about how appellant had acquired the property is considered in light of the Sentencing Code's guidelines, in particular, in light of the factors identified as pertinent in deciding whether probation is appropriate, it will be seen that the judge was also justified in characterizing appellant's criminal conduct as "serious[]."

Given all these circumstances, we conclude that the sentencing judge, in deciding upon a jail sentence of two to four months instead of probation or partial confinement, did not abuse his discretion.

Affirmed.