439 A.2d 748

**COMMONWEALTH of Pennsylvania**

**v.**

**Mildred L. HAWKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed Jan. 5, 1982.

58

Charles M. Schwartz, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

Appellant was convicted by a jury on eighteen counts of theft by deception,[1] eighteen counts of receiving stolen property[2], eighteen counts of securing execution of documents by deception[3] and one count of criminal conspiracy[4]. She was sentenced on March 16, 1979 to a period of thirty months probation.

The issues raised by Appellant are (1) whether the lower court erred in refusing to dismiss the information filed against Appellant because of a violation of the statute of limitations, 18 Pa.C.S.A. § 108 and (2) whether the counts of receiving stolen property should have been dismissed due to the statute of limitations on the basis that fraud, as alleged in the information, is not a material element of the crime as required by 18 Pa.C.S.A. § 108(c)(1).

An information, containing a total of seventy-six counts and including seven different criminal statutes, was filed against Appellant on April 11, 1978 pursuant to her involvement in fraudulently obtaining funds from the federal Manpower (now Jobpower) program during 1974 and 1975. The investigation of purported "ghosts" on the Manpower payroll began in June of 1976.

Two cancelled Manpower paychecks, made payable to one *Mildred Louise* and bearing a second endorsement of Iris J. Communale were discovered in March of 1977. The checks were dated June 6, and June 11, 1975, respectively. The 1974 and 1975 personnel files of *Mildred Louise* were also received by the district attorney's office in March of 1977.

1. 18 Pa.C.S.A. § 3922.

2. *Id.*, § 3925.

3. *Id.*, § 4114.

4. *Id.*, § 903.

Verification of the information contained in the applications located in the files and the information found on the two checks produced the following information by April 4, 1977: that no *Mildred Louise* resided at the address listed on the applications, although a *Mildred Hawkins* was discovered to reside there; that the social security number listed on the applications was assigned to *Mildred Hawkins* and that she had been and was employed full-time at a V.A. hospital; that the two cancelled checks appeared to have been issued prior to the commencement of the 1975 summer program and that certain discrepancies existed between the information found on the 1974 and 1975 applications of *Mildred Louise*, including birthdate, schooling, number of family members and the signatures. On April 5, 1977, a check was made of the V.A. hospital employment records to determine *Mildred Hawkins'* job status during 1974 and 1975 and it was also determined from the Manpower personnel files that *Mildred Louise's* alleged Manpower supervisor *may* not have existed.

On April 11, 1977, information received from the Bureau of Motor Vehicles on *Mildred Hawkins* revealed that her birthdate did not agree with the birthdates listed on the applications of *Mildred Louise*. On April 12, 1977, after several unsuccessful attempts to locate *Mildred Hawkins*, she was interviewed by an investigator from the district attorney's office. Appellant stated that she recognized the two 1975 cancelled checks and had received the proceeds therefrom. She also stated that she had been employed by the Manpower program in 1974 and 1975. Interviews with Manpower employees, to confirm whether either *Mildred Louise* or *Mildred Hawkins* had ever worked in the Manpower programs began at the end of June, 1977. The cancelled paychecks for 1974, issued to *Mildred Louise*, were received by the district attorney's office from the bank on June 30, 1977. The remaining cancelled checks for 1975 issued to *Mildred Louise* were received from the bank in July and August of 1977. It was not conclusively determined until early 1978, when the interviews with Manpower employees

had been completed, that neither *Mildred Louise* nor *Mildred Hawkins* had worked in any Manpower program. Some of these employees were called to testify before a special investigating grand jury in February of 1978.

## I.

The general statute of limitations applicable to the charges upon which Appellant was convicted is two years. 18 Pa.C.S.A. § 108(b)(2). An exception to this two year period is found at 18 Pa.C.S.A. § 108(c)(1)[5] which states:

(c) *Exceptions.*—If the period prescribed in subsection (b) of this section has expired, a prosecution may nevertheless be commenced for:

(1) Any offense a material element of which is either fraud or a breach of fiduciary obligation within one year after *discovery of the offense* by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is himself not a party to the offense, but in no case shall this paragraph extend the period of limitation otherwise applicable by more than three years. (Emphasis added.)

. Because the general two year statute of limitations had run on all of the charges prior to the filing of the information, the district attorney averred in the information that "either fraud or a breach of fiduciary obligation is a material element" of the offenses, satisfying the notice requirement when section 108(c)(1) is invoked. *Commonwealth v. Eackles*, 286 Pa.Super.Ct. 146, 428 A.2d 614 (1981).

Appellant's first argument is that the date of the "discovery of the offense[s]" was April 5, 1977, so that by filing

5. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; repealed from Title 18 and transferred to 42 Pa.C.S.A. § 5552(c)(1) by Act of 1976, July 9, P.L. 586, No. 142, eff. June 27, 1978. Also, section 25(c) of Act 1976, July 9, P.L. 586, No. 142, generally effective June 27, 1978, provides as follows:

"(c) The period of limitations specified in this act with respect to crimes and offenses shall not apply to crimes and offenses committed before the effective date of Title 18 (relating to crimes and offenses) and the prior statutes of limitation are hereby continued in force as to such crimes and offenses."

the information on April 11, 1978, the Commonwealth failed to commence the action within one year of its "discovery", therefore barring the action due to the statute of limitations.

We are now faced with defining the term "discovery of the offense", as set forth in 18 Pa.C.S.A. § 108(c)(1). We have found no Pennsylvania case that has yet defined this term.[6]

"Discovery" has been defined as:

"In a general sense, the ascertainment of that which was previously unknown; the disclosure or coming to light of what was previously hidden; the acquisition of notice or knowledge of given acts or facts; as, in regard to the 'discovery' of fraud affecting the running of the statute of limitations, or the granting of a new trial for newly 'discovered' evidence."

Black's Law Dictionary (5th Ed.1979).

*Discovery of the offense* has also been defined as "gaining knowledge of or finding out that a penal statute has been violated". *People v. McGreal*, 4 Ill.App.3d 312, 321, 278 N.E.2d 504, 510 (App.Ct.1971). The Supreme Court of Kansas has stated that (in a civil case) *discovery of the fraud* "[i]mplies knowledge, and is not satisfied by mere suspicion of wrong. The suspicion may be such as to call for further investigation, but is not of itself a discovery." *Migenback v. Migenback*, 176 Kan. 471, 478, 271 P.2d 782, 787 (1954), *quoting Marbourg v. McCormick*, 23 Kan. 38, 43 (1879). *See also State v. Civella*, 368 S.W.2d 444, 451 (Mo.1963).

■ The Commonwealth has the burden to prove that the discovery of the alleged offenses took place within the year prior to the filing of charges. *Commonwealth v. Hoffman*, 263 Pa.Super.Ct. 442, 398 A.2d 658 (1979).

6. This court in *Commonwealth v. Maleno*, 267 Pa.Super.Ct. 560, 407 A.2d 51 (1979), did discuss 18 Pa.C.S.A. § 108(c)(1). However, the analysis found in *Maleno* does not assist us in defining "discovery of the offense".

■ By an analysis of the cogent facts listed *supra*, it is clear that *discovery of the offenses* did not occur, *at the earliest*, until Appellant was interviewed on April 12, 1977 and admitted to receiving the two 1975 Manpower checks. The opinion of the lower court goes further and states that discovery of the offenses did not occur until some time in 1978, when, after interviewing numerous Manpower employees, it was determined that no *Mildred Louise* or *Mildred Hawkins* had been employed in the program.

Appellant alleges that the Commonwealth "discovered" the offenses on or before April 5, 1977. However, upon analyzing the facts known on that date, we see no basis for this allegation. As of April 5 only a *suspicion* existed that (1) a crime or crimes had been committed involving one *Mildred Louise* and (2) that the said *Mildred Louise* was, in fact, *Mildred Hawkins*.

The facts known on April 5 indicated that one *Mildred Louise* was listed on the 1974 and 1975 Manpower applications, that the said party listed herself as unemployed, and that certain discrepancies involving the said person's age, educational experience and number of family members existed by comparing the two applications. It was also known that the said *Mildred Louise* had been issued at least two paychecks in 1975, apparently prior to the commencement of the program that year. It was not known for certain at that point in time whether the said *Mildred Louise* had actually performed work for the program or not. Also, the only connection between *Mildred Louise* and *Mildred Hawkins* by April 5 was (1) the use of Appellant's social security number on the applications, (2) the similarity of the names and (3) the identical residence addresses. Such evidence could not have reached the level of producing the *discovery of the offenses* until proof of Appellant's receipt of monies occurred on April 12. For example, a third party named *Mildred Louise* could have mistakenly used Appellant's social security number and could have been a legitimate Manpower

employee. This error would have been a violation of the Manpower guidelines, but not necessarily a criminal offense. Therefore, until it was discovered that *Mildred Hawkins* had received proceeds, there was no basis for assuming she, or anyone else, had engaged in any criminal activity.

Finally, *discovery of the offenses* may not have occurred until sometime in 1978, as determined by the lower court, when it was determined that no individual by the name of either *Mildred Louise* or *Mildred Hawkins* had actually performed work in the Manpower program.

We therefore hold that the *discovery of the offenses*, as required by 18 Pa.C.S.A. § 108(c)(1), did not occur prior to April 12, 1977, when the district attorney's office was informed by *Mildred Hawkins* that she had received the proceeds of the two 1975 Manpower paychecks issued to *Mildred Louise.*

Therefore, Appellant's first argument is without merit, as the information was brought within one year of the discovery of the offenses.

## II.

The second issue is whether fraud is a material element of the crime of receiving stolen property, as required under 18 Pa.C.S.A. § 108(c)(1), for the extension of the general statute of limitations.

Receiving stolen property, 18 Pa.C.S.A. § 3925, states:

§ 3925. *Receiving stolen property*

(a) Offense defined.—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

(b) Definition.—As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

Fraud is characterized by a false representation of a material matter made with knowledge of its falsity and with the intent to deceive. *Commonwealth v. Eackles, supra.* A material element of an offense is defined in 18 Pa.C.S.A. § 103 as:

*"Material element of an offense."* An element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unconnected with:

(1) the harm or evil incident to conduct, sought to be prevented by the law defining the offense; or

(2) the existence of a justification or excuse for such conduct.

It is clear that because breach of a *fiduciary obligation* is not part of the instant case, fraud must be a material element of the offense in order to allow the two year statute of limitations to be extended, as per section 108(c)(1).

■ The harm or evil sought to be prevented by section 3925 is the receiving, retaining or disposing of another's movable property knowing or believing it to be stolen. Clearly, fraud is not required to prove the elements of the crime. The Commonwealth need only establish (1) that the goods were stolen, (2) that defendant received such goods and (3) that defendant knew them to be stolen or had reasonable cause to know that they were stolen. *Commonwealth v. Gore,* 267 Pa.Super.Ct. 419, 406 A.2d 1112 (1979). Proof of fraud is not essential to such a conviction. Fraud is therefore not the harm or evil sought to be prevented, nor does it necessarily involve justification or excuse for such conduct. *See Commonwealth v. Eackles, supra* (fraud not a material element of theft by unlawful taking).

The Commonwealth argues that *Commonwealth v. Farrar,* 271 Pa.Super.Ct. 434, 413 A.2d 1094 (1979) determined that receiving stolen property was a continuing offense, termi-

nating only when the stolen property is taken from the receiver.

We believe, however, that the Commonwealth's reliance on *Farrar* to establish a "continuing offense" is misplaced. The *Farrar* court considered a fact situation where the defendant had participated in the removal of antique china closets and an antique table from a private home in Maryland. Some six months later, the antiques were transported to Pennsylvania when the defendant and her husband removed their residence to this state. Nearly two years later, the stolen items were recovered from the Pennsylvania residence of the defendant, and eventually returned to their rightful owner in Maryland. In relying on the earlier case of *Commonwealth v. Ellis*, 233 Pa.Super. 169, 173 n.3, 335 A.2d 512, 515 n.3 (1975), the *Farrar* court found that the legislature's inclusion of a probation against *retaining* and *disposing* of stolen property makes violation of § 3925 an "ongoing" offense. The court reasoned that since the defendant in *Farrar* "retained stolen property in Pennsylvania," the lower court had jurisdiction to try her and the offense was a "continuing" one which did not terminate until the stolen property was taken from her some two and one-half years after the original theft. *Commonwealth v. Farrar, Id.*, 271 Pa.Super. at 441–42, 413 A.2d at 1098.

We are unable to conclude, in the instant case, that there has been any "retention" of property beyond the point prior to the commencement of the investigation when the Appellant, Mildred Hawkins, received the proceeds from the checks. We distinguish *Farrar* not because, as the Commonwealth suggests, the items there involved were "unique", but quite simply because *Farrar* involved property that was retained, and the instant case does not.

Therefore, the convictions for receiving stolen property are reversed. The remaining convictions on all counts of theft by deception, securing execution of documents by deception and criminal conspiracy are affirmed.