2019 PA Super 361

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH MANUEL MALDONADO- | : | |
| VALLESPIL | : | No. 1430 MDA 2018 |
| | : | |
| Appellant | : | |
| | : | |

Appeal from the Judgment of Sentence imposed July 19, 2018
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0006157-2017

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

DISSENTING OPINION BY BOWES, J.:          **FILED DECEMBER 20, 2019**

I respectfully dissent.  In my view, the certified record adequately established that the *locus* of Appellant Joseph Manuel Maldonado-Vallespil's crime of theft by receiving stolen property was in Berks County under Pennsylvania law.[1]  Therefore, I believe that the trial court properly exercised subject matter jurisdiction and that Appellant's judgment of sentence should be affirmed.

The factual history of this case is central to my analysis and despite the learned Majority's apt summary, I believe that the legal significance of a

_____

[1]  I would affirm on an alternative basis than the one explicitly relied upon by the trial court.  **See Commonwealth v. Toanone**, 553 A.2d 998, 1001 (Pa.Super. 1989) ("An appellate court may affirm a trial court order on a basis other than that relied upon by the trial court.").

number of key facts has been overlooked. On October 31, 2017, the victim in this case, Jose Munoz, discovered that numerous tools and equipment were missing from his truck. He suspected that Appellant had stolen these items based upon Appellant's abrupt departure from Mr. Munoz's employ earlier that same day. Mr. Munoz contacted the Reading Police Department, and officers responded to Mr. Munoz's residence at 507 N. 14th Street, Reading, Pennsylvania, which is located within Berks County. With the officers present, Mr. Munoz called Appellant on a cellular telephone that he had given to Appellant during the course of his employment. Appellant answered the call and admitted that he had stolen the tools from Mr. Munoz's truck and sold them to an undisclosed third party. *See* N.T. Trial, 7/18/18, at 23. During this phone call, Appellant also stated that he remained in contact with this individual and could retrieve the tools from him. *Id.* at 23-24. Appellant also spoke directly with Officer Steve Valdez, who recounted the telephone conversation as follows:

> Q: And what do you say to the individual on the other end of the phone?
>
> A: I told him if he had the tools, that he had until the next day to return them. If not, he would be charged.
>
> Q: And what did that individual say to you?
>
> A: He said he was going to return them.
>
> Q: Did he say anything else?
>
> A: He told me that he took them and that he was going to return them. That's what he had said.

*Id.* at 43. Thus, Appellant represented that: (1) he had continued access to the tools such that he could retrieve them; and (2) that he was able and willing to restore the tools to Mr. Munoz. *Id.* at 24, 42-43.

Appellant was given a deadline of 8:00 a.m. on the following day to return the stolen tools, and had agreed that he would return the tools by that time. *Id.* at 23-25, 42-43. Appellant did not follow through on his promise. On November 9, 2017, a criminal complaint and affidavit of probable cause was filed by the Reading Police Department based on the above-recited facts. That same day, a magisterial district judge issued an arrest warrant for Appellant. On November 14, 2017, the arrest warrant was served and Appellant was taken into custody at the Berks County Sheriff's Office Central Booking Center at 633 Court Street, Reading, Pennsylvania, which is situated within the borders of Berks County. *See* Berks County Sheriff Fee Bill, 11/14/17, at 1.

As the Majority has correctly noted, our standard of review in this context is *de novo*, and our scope of review is plenary. *See Commonwealth v. Bethea*, 828 A.2d 1066, 1071 n.5 (Pa. 2003). Furthermore, this Court may affirm a judgment or verdict for any reason appearing of record. *See Commonwealth v. Melvin*, 103 A.3d 1, 19 (Pa.Super. 2014).

In assessing subject matter jurisdiction, the learned Majority focuses upon the evidence adduced by the Commonwealth at trial. However, that approach fails to consider the fundamental nature of the crime of which Appellant was convicted: theft by receiving stolen property. *See* 18 Pa.C.S.

- 3 -

§ 3925(a). In relevant part, this crime is defined as follows: "A person is guilty of theft if he intentionally receives, **retains, or disposes** of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, . . . ." *Id*. (emphasis added). Based upon the aforecited language, this Court has concluded that "the legislature's inclusion of a prohibition against retaining and disposing of stolen property makes this offense 'ongoing.'" *Commonwealth v. Farrar*, 413 A.2d 1094, 1098 (Pa.Super. 1979); *see also Commonwealth v. Kuykendall*, 465 A.2d 29, 31 (Pa.Super. 1983) (same). Specifically, this Court has previously held that "the retention of stolen property is a 'continuing' offense which does not terminate until the stolen property is taken from the accused." *Commonwealth v. Kelly*, 446 A.2d 941, 943-44 (Pa.Super. 1982). Because theft by receiving stolen property is an "ongoing" offense, "prosecution may be maintained in a county in which an accused is found to be in possession of the stolen property." *Commonwealth v. Downs*, 483 A.2d 884, 889-90 (Pa.Super. 1984).

In the instant case, Appellant was never observed in possession of Mr. Munoz's stolen tools, and those items were never recovered. Even though Appellant freely confessed his theft, Appellant apparently fenced his ill-gotten goods to the unknown buyer discussed above. I submit that Appellant's own statements via telephone to Mr. Munoz and Officer Valdez establish that Appellant maintained continuous "constructive possession" of the stolen items. *See* Commonwealth's brief at 10 ("Under such circumstances,

[Appellant] would have constructively possessed the victim's property in [Berks County].").  In this context, constructive possession means that Appellant had "the power to control the contraband and the intent to exercise that control."  *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa.Super. 1996).  Furthermore, constructive possession may be established via circumstantial evidence and "[t]he requisite knowledge and intent may be inferred from examination of the totality of the circumstances."  *Id*.  Here, Appellant's statements during the phone call clearly evinced both his continuing ability to exercise control over the stolen tools, and also his intent to exercise that control.  *See* N.T. Trial, 7/18/18, at 23-25, 41-44 (unchallenged representations that Appellant stated that he had ongoing access to the stolen tools and intended to exercise that control).

It is also well-established under Pennsylvania precedent that "[t]he fact that another person may also have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband." *Haskins*, *supra* at 330.  Accordingly, that Appellant may have sold the stolen items to an unnamed third-party is not dispositive regarding Appellant's constructive possession.  *See Commonwealth v. Grekis*, 601 A.2d 1275, 1282 (Pa.Super. 1992) ("[T]here is no requirement that appellant actually physically have handled the stolen goods in order to have possessed them for purposes of this offense.").  Moreover, Appellant's statements also indicate that Appellant was exercising control over these items via the unnamed third

party. *Id.* ("[A]ppellant's dominion and control over the goods may be exercised through another, . . . ."). Either way, Appellant was exercising "constructive possession" over the at-issue contraband, *e.g.*, the stolen tools.

Based upon Appellant's above-referenced statements promising to return these items, his constructive possession of the stolen tools continued unabated until he was located and arrested within the physical borders of Berks County.[2] Thus, at the moment that Appellant was taken into custody in Berks County, he was still in constructive possession of the stolen tools, which is sufficient to satisfy the territoriality requirements set forth at 18 Pa.C.S. § 102(a)(1) as they relate to subject matter jurisdiction. *See Commonwealth v. Ellis*, 335 A.2d 512, 515 n.3 (Pa.Super. 1975) ("Thus, the offense is an ongoing one, still occurring in the instant case at the time the officer [arrested] the appellant.").[3] Moreover, a demonstration of constructive possession is sufficient on its own to support a conviction for theft by receiving stolen property at § 3925. *See Commonwealth v. Brady*, 560 A.2d 802, 806 (Pa.Super. 1989) ("To establish that appellant received or

---

[2] There is also no indication in the certified record that some definitive event terminated Appellant's constructive possession. *See Commonwealth v. Hawkins*, 439 A.2d 748, 752 (Pa.Super. 1982) ("[T]he offense was a 'continuing' one which did not terminate until the stolen property was taken from [defendant] . . . .").

[3] The holding in *Commonwealth v. Ellis*, 335 A.2d 512 (Pa.Super. 1975) did not address jurisdiction, but adjudicated whether a police officer had probable cause to arrest a defendant observed in possession of stolen property. However, this Court explicitly cited and relied upon *Ellis* in *Commonwealth v. Farrar*, 413 A.2d 1094 (Pa.Super. 1979). Thus, its inclusion here as persuasive authority is appropriate.

possessed the stolen property, it was sufficient to show that appellant had joint or constructive possession of it."). I would conclude that constructive possession similarly qualifies as an overt act for the purposes of § 102(a)(1).

Overall, I find this case to be analogous to the holdings in *Farrar* and *Kuykendall*. In those cases, the defendants were found in possession of stolen property that was initially misappropriated outside of Pennsylvania's territorial borders. They challenged subject matter jurisdiction upon the basis that the underlying overt acts of criminality did not occur within the Commonwealth. *See Farrar*, *supra* at 1098; *Kuykendall*, *supra* at 31. This Court ultimately concluded that ongoing possession of the stolen property while within the Commonwealth was sufficient to establish subject matter jurisdiction. *Id.* Assuming, *arguendo*, that Appellant's receipt of stolen property did not occur within Berks County, I would affirm based upon Appellant's ongoing constructive possession of the stolen property when, having failed to return the stolen property, he was taken into custody within the borders of Berks County.[4]

I respectfully dissent.

---

[4] Such a holding has the additional virtue of comporting with the U.S. Supreme Court's seminal precedent in *Strassheim v. Daily*, 221 U.S. 280, 284-85 (1911) (Holmes, J.), stating that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." Even if the precise *situs* of Appellant's misappropriation is unknown, it was undeniably directed at, and created a detrimental effect upon, a resident of Berks County.