**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 71 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 1028 MDA |
| | : | 2022 entered on October 23, 2023, |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the York County Court of |
| | : | Common Pleas, Criminal Division, |
| CYNTHIA CAROLYN BLACK, | : | at No. CP-67-CR-0002801-2020 |
| | : | entered on June 17, 2022. |
| Appellant | : | |
| | : | ARGUED:  October 8, 2025 |

**OPINION**

**JUSTICE McCAFFERY**                         **DECIDED:  June 16, 2026**

In this discretionary appeal, we consider whether the crimes of theft by deception[1] and receiving stolen property (RSP)[2] are continuing offenses for purposes of the statute of limitations.  *See* 42 Pa.C.S. § 5552(d).  Generally, an offense is committed when every element of the crime has occurred.  The statute of limitations begins to run the next day.  However, the limitations period may be extended when the legislature has plainly indicated that the purpose of a particular crime is to prevent a continuing course of conduct.  In that instance, the crime is committed when either the course of conduct, or the defendant's complicity therein, is terminated, and the statute of limitations begins to run the next day.  *See id.*  Today, we hold that the theft by deception statute does not

---

[1] 18 Pa.C.S. § 3922(a).

[2] 18 Pa.C.S. § 3925(a).

clearly indicate the legislature's intent to prohibit a continuing course of conduct. Thus, the limitations period for theft by deception begins to run the day after the crime is committed — that is, the day after the last deceptive act that creates or reinforces a false impression. However, we hold that the RSP statute is intended to prevent a course of conduct that continues so long as the defendant retains possession of the stolen property. Once the defendant disposes of the property, the statute of limitations period commences. For these reasons, we conclude the Commonwealth charged Appellant, Cynthia Carolyn Black, with theft by deception and RSP after the statute of limitations period for each crime expired. Therefore, we vacate her convictions for both crimes, and remand for further proceedings.

## I. FACTS & PROCEDURAL HISTORY

Beginning in 2000 or 2001, Black lived with her grandmother, Glenora Delahay (Grandmother), at a home in Ardmore, Pennsylvania. During this time, Grandmother received monthly payments from the Social Security Administration (SSA), which were deposited into a bank account shared by Grandmother, Black, and Glenora Waltzinger (Black's mother).[3] Sometime between 2001 and December 2005, Grandmother passed away.[4] Black did not report Grandmother's death to the authorities or the SSA. Rather, "[a]fraid to lose the [social security] payments[,]" Black moved Grandmother's body to a freezer located in the basement of the Ardmore home. Stipulations of Fact for Trial (Stipulated Facts), 3/15/2022, at 3 (unpaginated). The SSA continued to deposit Grandmother's monthly payments into the joint bank account.

---

[3] Waltzinger died in 2011.

[4] Black later told authorities she found Grandmother deceased in the home in March 2004. *See* Stipulations of Fact for Trial, 3/15/2022, at 2-3 (unpaginated).

In 2007, Black purchased a home in York County. When she moved, she took the freezer with her and placed it in an outbuilding on the property. Meanwhile, in the fall of 2010, the SSA sent letters to Grandmother at an address in Hagerstown, Maryland, requesting an in-person meeting at her residence to determine if she was receiving the proper benefits.[5] After receiving no response, the SSA ceased paying monthly benefits in November 2010.

In May 2018, the bank foreclosed on Black's York County property. When Black moved out of the home, she left the freezer. On February 7, 2019, the locked freezer was discovered by two visitors to the property. Upon prying it open, they observed human remains inside a garbage bag and immediately notified the Pennsylvania State Police. Troopers later interviewed Black, who admitted she found Grandmother deceased in the Ardmore home in 2004, and that "a decision was made to place the body … in the freezer in the basement" so as not to lose Grandmother's social security benefits. Stipulated Facts at 3. In May of 2020, the human remains were identified as Grandmother's.

On May 26, 2020, the Commonwealth charged Black with theft by unlawful taking, RSP, and abuse of a corpse.[6] Black filed an omnibus pretrial motion in February 2021,

---

[5] Copies of the letters were attached as exhibits to Black's "Motion to Remove from Trial List and Schedule a Stipulated Bench Trial" filed on March 15, 2022.

[6] *See* 18 Pa.C.S. §§ 3921(a), 3925(a), and 5510, respectively.

Although Waltzinger also had access to the shared bank account, the parties do not discuss Waltzinger's potential involvement in these crimes. However, as noted above, Waltzinger passed away in 2011, eight years before Grandmother's body was uncovered. Moreover, during the stipulated bench trial, the Commonwealth's attorney naturally focused on Black's complicity. At the time of Grandmother's death, Black was the only person in the home capable of transporting Grandmother's body to the basement freezer — Waltzinger was 67 years old, and Black's then-husband was disabled. *See* N.T., 4/6/2022, at 14; Stipulated Facts at 3. Further, the Commonwealth highlighted that in documents Black filed seeking a mortgage reduction for the York County property, she included Grandmother's SSA benefits as her own "household income." N.T., 4/6/2022, (continued…)

requesting, *inter alia*, the trial court quash the theft and RSP charges because they were filed after the five-year statute of limitations period expired. *See* 42 Pa.C.S. § 5552(b)(1) (prosecution for theft, theft by deception, and RSP must be commenced within five years after crime is committed). In April 2021, the Commonwealth moved to amend the criminal information to include one count of theft by deception.[7] Black objected, and the trial court conducted a hearing on June 11, 2021, to address both Black's pretrial motion and the Commonwealth's motion to amend. Ultimately, the court granted the Commonwealth's motion to amend the information to add a charge of theft by deception, dismissed the charge of theft by unlawful taking as filed beyond the statute of limitations, and denied Black's statute of limitations challenge to the other charges.

The case proceeded to a stipulated bench trial conducted on April 6, 2022, at which time the trial court found Black guilty of all three offenses — theft by deception, RSP, and abuse of a corpse. On June 17, 2022, the court sentenced Black to concurrent terms of 11½ to 23 months' imprisonment for theft by deception and RSP, and a consecutive two years' probation for abuse of a corpse. Black filed a timely direct appeal, challenging the trial court's denial of her motion to dismiss the charges of theft by deception and RSP as untimely filed.[8]

In a unanimous, unpublished decision, the Superior Court affirmed the judgment of sentence. *See Commonwealth v. Black*, 307 A.3d 680 (Pa. Super. 2023) (unpub. memo. at *1).

---

at 16. Thus, while Waltzinger may have been an accomplice or co-conspirator, there was ample evidence demonstrating Black was implicated in the criminal activity.

[7] *See* 18 Pa.C.S. § 3922(a)(1).

[8] Black did not challenge her conviction for abuse of a corpse.

The Court first considered Black's conviction of theft by deception, in terms of its five-year statute of limitations. *See Black*, 307 A.3d at *2 (*citing* 42 Pa.C.S. § 5552(b)(1)). The Superior Court explained theft by deception requires proof the defendant "intentionally obtain[ed] or with[held] property of another by deception[,]" and that a "person deceives if [s]he intentionally … creates or reinforces a false impression[.]" *Id.* (*citing* 18 Pa.C.S. § 3922(a)(1)). The panel stated that in order to obtain a conviction for theft by deception, the "Commonwealth must prove that the victim relied upon the false impression." *Id.* (citations omitted).

While Black argued that the limitations period commenced in November 2010, after the SSA issued its last payment to Grandmother, the Superior Court disagreed. Relying upon its prior decisions in *Commonwealth v. Fisher*, 682 A.2d 811 (Pa. Super. 1996), and *Commonwealth v. Succi*, 173 A.2d 269 (Pa. Super. 2017), the Court explained that the limitations period does not begin to run until the victim becomes aware of the deception. Here, the Court concluded, the statute of limitations commenced when "the victim, the SSA, discovered that [Black] had hidden [Grandmother's] body in order to deceive the SSA into continuing to issue monthly checks to [Grandmother] after her death so that [Black] could obtain those funds." *Black*, 307 A.3d at *3. Thus, the panel agreed with the trial court's conclusion that the limitations period did not begin to run until after the SSA was made aware of Black's deception in May 2020, when Grandmother's body was identified, and the criminal complaint filed that same month fell within the statute of limitations. *See id.* Accordingly, the Court denied relief on Black's first claim.

Next, the Superior Court considered whether the RSP offense was charged within the limitations period. The panel observed that the statute of limitations for RSP is the same as for theft by deception — five years. *See Black*, 307 A.3d at *4 (citation omitted). Like her prior argument, Black asserted that the limitations period for RSP began to run

after the SSA deposited Grandmother's last monthly payment in November 2010. She argued that "because she received only monetary, [and] not discrete, property[,] she could not have retained the specific monetary property for a continuing course of time" and, therefore, "the crime was complete" in November 2010. *Id.* at *3.

The Superior Court disagreed and concluded that RSP is an "ongoing offense, which continues as long as the perpetrator retains possession of the stolen property." *Black*, 307 A.3d at *4 (*citing Commonwealth v. Farrar*, 413 A.2d 1094, 1095 (Pa. Super. 1979); *Commonwealth v. Hawkins*, 439 A.2d 748, 752 (Pa. Super. 1982)). An RSP conviction requires proof that the defendant "intentionally receive[d], retain[ed], or dispose[d] of" property they know, or should have reason to believe, is stolen. *Id.* (*citing* 18 Pa.C.S. § 3925(a)). Because Black had not "returned or relinquished" any of the SSA payments she received after Grandmother's death, the Court concluded she "retained the stolen funds" and the offense was still ongoing at the time the Commonwealth brought the charges. *Id.* Thus, the Superior Court found both crimes were charged within the applicable limitations period, and Black was entitled to no relief.

## II. ISSUES

Black petitioned this Court for allowance of appeal, which we granted on the following issues:

(1) Does the Superior Court's decision create uncertainty in the statute of limitations surrounding theft and fraud cases where it used an improper start date for the offenses of theft by deception?

(2) [D]oes the Superior Court's decision create uncertainty in the statute of limitations surrounding receiving stolen property where it improperly held [Petitioner] engaged in a continuing offense?

*Commonwealth v. Black*, 326 A.3d 395 (Pa. 2024).

## III. STATUTE OF LIMITATIONS

While a "criminal statute of limitations is an act of legislative grace, not a right[,]"[9] we have long recognized its purpose is

> to limit exposure to criminal [p]rosecution to a certain fixed period of time[, and] to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. …

*Commonwealth v. Cardonick*, 292 A.2d 402, 407-408 (Pa. 1972) (*citing Toussie v. United States*, 397 U.S. 112, 114-115 (1970)). Although statutes of limitations encourage prompt investigations by law enforcement, they were enacted primarily to protect those accused of criminal activity. Accordingly, we construe statutes of limitations "liberally … in favor of the defendant and against the Commonwealth." *Id.* at 407 (citations omitted).

Pennsylvania's criminal statutes of limitations are codified in Sections 5551 through 5554 of the Judicial Code. *See* 42 Pa.C.S. §§ 5551-5554. Relevant to the case before us, Section 5552(b) declares that, for a delineated list of "major offenses" — including theft by deception and RSP — "the prosecution must be commenced within five years" after the crime is committed. 42 Pa.C.S. § 5552(b)(1) (requiring five-year statute of limitations for theft offenses codified under Sections 3921 through 3933 of the Crimes Code). Notably, the statute provides an exception for offenses involving fraud.[10] Even if

---

[9] *Commonwealth v. Johnson*, 553 A.2d 897, 900 (Pa. 1989). *See also Commonwealth v. Duffy*, 96 Pa. 506, 514 (1880).

[10] Section 5552(c) and (c.1) set forth several other exceptions to the stated limitation periods, none of which are relevant here. *See* 42 Pa.C.S. § 5552(c)(2) (offenses committed by public officer or employee while in office or employed); (c)(3)-(3.1)(certain sexual crimes committed against a victim who is a minor, or under the age of 23); (c)(4) (certain firearm offenses); (c)(5)-(6) (human trafficking offenses); and (c.1) (certain sexual offenses when the perpetrator is identified by DNA).

the limitations period has expired under subsection (b), the Commonwealth may still prosecute a defendant for

> [a]ny offense a material element of which is either **fraud** or a breach of fiduciary obligation **within one year after discovery of the offense by an aggrieved party** or by a person who has a legal duty to represent an aggrieved party and who is himself not a party to the offense, **but in no case shall this paragraph extend the period of limitation otherwise applicable by more than three years**.

42 Pa.C.S. § 5552(c)(1) (emphases added). Therefore, when fraud is an element of the charged offense, the Commonwealth may file charges within one year of the date the fraud is discovered by the victim; however, the limitations period cannot be extended more than an additional three years. In other words, the limitations period for a fraud offense listed under Section 5552(b)(1) is, at most, **eight years** — even if the victim does not discover the fraudulent conduct until after that time expires.

Regardless of whether a particular offense falls under the general five-year limitations period or the extended eight-year period for fraud, the key inquiry is: when does the limitations period commence? Section 5552(d) directs that the statute of limitations begins to run "on the day after the offense is committed." 42 Pa.C.S. § 5552(d). Further, and pertinent here, subsection (d) provides that "[a]n offense is committed either when every element occurs, or, **if a legislative purpose to prohibit a continuing course of conduct plainly appears**, at the time when the course of conduct or the complicity of the defendant therein is terminated." 42 Pa.C.S. § 5552(d) (emphasis added). This Court has never addressed the "continuing course of conduct" language in subsection (d). That language — and in particular what is required to demonstrate that a legislative purpose to prohibit such conduct "plainly appears" in the statute — is squarely at issue in the case before us.

## IV. THEFT BY DECEPTION

Black first challenges the timeliness of her prosecution for theft by deception. Codified in Section 3922 of the Crimes Code, theft by deception requires proof that a person "intentionally obtain[ed] or with[held] property of another by deception." 18 Pa.C.S. § 3922(a)(1). The statute further explains that a "person deceives if [s]he intentionally … creates or reinforces a false impression[.]" *Id.*

Black stipulated to the following facts supporting her conviction of this offense. She shared a bank account with Grandmother, in which Grandmother's monthly SSA payments were deposited. *See* Stipulated Facts at 1, 3. She admitted to authorities that Grandmother died in the home they shared in March 2004, and that "a decision was made to place [her] body … in the freezer in the basement" so that the SSA payments would continue after her death. *Id.* at 3. Black moved the freezer to her home in York County in 2007, and the SSA continued sending monthly payments to Grandmother, which were deposited into the shared bank account, until November 3, 2010. *See id.* at 2-3. These stipulations, coupled with the fact that Black did not inform either the SSA or local authorities of Grandmother's death, were sufficient to prove that she intentionally created a "false impression" that Grandmother was still alive, so that she could obtain Grandmother's SSA benefits. 18 Pa.C.S. § 3922(a)(1).

Under these facts, Black maintains the statute of limitations for theft by deception began to run on November 4, 2010, the day after the final SSA deposit, when every element of the crime had been committed. *See* Black's Brief at 17-18 (*citing* 42 Pa.C.S. § 5552(d)). Accordingly, she contends the five-year statute of limitations expired in November 2015, but she was not criminally charged until May 2020. Moreover, Black notes that even if we determine fraud is a material element of theft by deception pursuant

to Section 5552(c)(1)[11] — which permits the Commonwealth to file charges "within one year after discovery of the offense by an aggrieved party" — that statutory exception extends the limitations period **only for an additional three years**, that is, a maximum eight-year limitations period. 42 Pa.C.S. § 5552(c)(1). Thus, the statute of limitations for her offense would have expired in November 2018, still two years **before** the Commonwealth filed the criminal complaint.

Black insists that the only way her conviction "can … be salvaged[,]" is if we conclude, under Section 5552(d), that "a legislative purpose to prohibit a continuing course of conduct plainly appears" in the theft by deception statute. Black's Brief at 19 (*citing* 42 Pa.C.S. § 5552(d)). Black argues that because no such purpose "plainly" appears in the language of the statute, and theft by deception "is not the sort of conduct that can only be viewed as inherently continuous[,]" the crimes should not be considered a "continuing offense" for purposes of Section 5552(d). *Id.* at 27.

Conversely, the Commonwealth maintains Black engaged in a continuing cover-up by concealing Grandmother's body in the freezer. Thus, it insists the statute of limitations did not commence until May 2018, when Black moved out of the York County residence and left the freezer unattended. *See* Commonwealth's Brief at 11. The Commonwealth contends that "ongoing activity of a cover-up precludes the statute of limitations from running until the cover-up is discovered." *Id.* at 13 (*citing Commonwealth v. Johnson*, 615 A.2d 1322 (Pa. Super. 1992)). Here, it explains "[t]he deception ceased in May of 2018, when [Black] lost dominion over the body due to the foreclosure on the [York County] property, as that is when [Black] ended the control over the freezer and

---

[11] In *Succi,* the Superior Court found the fraud exception in Section 5552(c)(1) applied to the crime of theft by deception. *Succi*, 173 A.3d at 281.

[G]randmother's corpse therein." *Id.* at 17. Because the criminal complaint was filed only two years later (May 2020), the five-year statute of limitations had not yet expired.

The Pennsylvania Office of Attorney General (OAG) submitted an amicus brief in support of the Commonwealth. It focuses on the phrase "**withholds** property of another" in the theft by deception statute, and argues the Legislature intended to prohibit "continuing conduct" when it added the term "withholding[,]" which is not in the Model Penal Code.[12] Amicus Brief at 7, 9 (emphasis in original). Indeed, the OAG analogizes the withholding of property with the continued possession of property, noting this Court has found "[p]ossession is clearly an ongoing act[.]" *Id.* at 8 (*citing Commonwealth v. Gross*, 101 A.3d 28, 35 n.5 (Pa. 2014)).

The question before us is one of statutory interpretation; thus, "our scope of review is plenary and our standard of review is *de novo*." *Commonwealth v. Gamby*, 283 A.3d 298, 304 (Pa. 2022) (citations omitted). Section 3922, defining the crime of theft by deception, is a penal statute. *See Commonwealth v. Campbell*, 758 A.2d 1231, 1236 (Pa. Super. 2000) ("[A] penal statute is a statute that define[s] criminal offenses and specif[ies] corresponding fines and punishment.") (citation and some punctuation omitted). Thus, the rule of lenity applies, so that if the provision is ambiguous, it "must be strictly construed in favor of the defendant." *Commonwealth v. Rosario*, 294 A.3d 338, 350 (Pa. 2023) (citations omitted). Moreover, Section 5552(d), like any statute of limitations, must be "liberally construed in favor of the defendant and against the Commonwealth." *Cardonick*, 292 A.2d at 407 (citations omitted).

The pertinent question presented in Black's first issue is when did the statute of limitations begin to run on her charge of theft by deception? Section 5552(d) provides

---

[12] The Model Penal Code defines theft by deception as follows: "A person is guilty of theft if [s]he **purposely obtains** property of another by deception." Model Penal Code, § 223.3 (Theft by Deception) (emphasis added).

two alternatives: (1) when every element of the crime occurred; or (2) "if a legislative purpose to prohibit a continuing course of conduct plainly appears," then the period commences when either the "course of conduct or the complicity of the defendant therein is terminated." 42 Pa.C.S. § 5552(d). While the parties' arguments focus on whether theft by deception is a continuing crime, the Superior Court (and the trial court) implied that the offense was not completed until the SSA learned of Black's deception, *i.e.*, when Grandmother's remains were identified in May 2020. *See Black*, 307 A.3d at *2-*3 (*citing* Trial Court Opinion, 11/2/22, at 4-5). *See id.* at *2 ("The statute of limitations for theft by deception does not commence until the victim discovers the deception.") (*citing Fisher*, 682 A.2d at 818). We disagree.

As defined in the Crimes Code, theft by deception requires two elements: (1) the defendant must intentionally obtain or withhold property of another by deception; and (2) she must do so by intentionally creating or reinforcing a false impression. *See* 18 Pa.C.S. § 3922. While the Commonwealth must prove the victim relied on the deception — *i.e.*, in order to establish that the defendant obtained or withheld the property by deception — the plain language of the statute **does not require** the Commonwealth to prove the victim was **aware** of the deception as an **element** of the crime. This is contrary to the Superior Court's conclusion. Thus, we must consider whether "a legislative purpose to prohibit a continuing course of conduct plainly appears" in the theft by deception statute. 42 Pa.C.S. § 5552(d).

As Black points out, when the Legislature intends for the offense to be a continuing one for purposes of the statute of limitations, it has expressly stated so. *See* Black's Brief at 20-21. For example, the criminal conspiracy statute explicitly declares that "[f]or purposes of **42 Pa.C.S. § 5552(d)** … conspiracy is a **continuing course of conduct** which terminates when the crime or crimes which are its object are committed or the

agreement that they be committed is abandoned by the defendant and by those with whom he conspired[.]" 18 Pa.C.S. § 903(g)(1) (emphases added). *See Commonwealth v. Volk*, 444 A.2d 1182, 1187 (Pa. Super. 1982) ("For purposes of the statute of limitation, the crime of conspiracy is a continuing offense … [a]nd any conspiracy that is renewed by repetitions may be prosecuted at any time within two years after the commission of the last offense.") (citations omitted). The Medicaid Fraud Abuse and Control Act[13] also plainly states that a violation of subsection (a) of the Act (knowingly or intentionally presenting a false or fraudulent claim for payment) "shall be deemed to continue **so long as the course of conduct or the defendant's complicity therein continues**; the offense is committed when the course of conduct or complicity of the defendant therein is terminated **in accordance with the provisions of 42 Pa.C.S. § 5552(d)** (relating to other offenses)." 62 P.S. § 1407(b)(1) (emphases added). Finally, the language of the Corrupt Organizations Act, 18 Pa.C.S. § 911, proclaims that "[a] violation of [the Act] **shall be deemed to continue so long as the person who committed the violation continues to receive any benefit from the violation.**" 18 Pa.C.S. § 911(c) (emphasis added). There can be no clearer expression of legislative intent to prohibit a continuing offense.

The OAG asserts that the crime of possession of a firearm is also "clearly an ongoing act — in other words, a course of conduct." Amicus Brief at 8 (*citing Gross*, 101 A.3d at 34 n.5). Relying on our decision in *Gross*, the OAG emphasizes that this Court stated that "[a]s long as one is in unlawful possession of a firearm, one is committing an offense." *Gross*, 101 A.3d at 34 n.5. While it correctly cites *Gross*, the OAG fails to acknowledge that decision focused on whether venue was proper, not whether the defendant was charged within the applicable limitations period. Moreover, the defendant

---

[13] 62 P.S. §§ 1401-1418.

in *Gross* was charged with conspiracy to provide her boyfriend with "unlimited possession and unconditional access to a firearm" when he was prohibited from possessing a firearm as a result of an outstanding protection from abuse order. *Gross*, 101 A.3d at 31, 34. Thus, this Court's commentary, in a footnote, that "unlawful possession of a firearm" continues so long as the prohibited person possesses the firearm amounts to *dicta* with respect to the statute of limitations question before us. *Id.* at 34 n.5 (citation omitted).

However, the theft by deception statute is markedly different. It does not reference Section 5552(d) or explicitly state the offense continues for any period of time. Nor is theft by deception a possessory offense. Rather, a person is guilty of theft by deception if she "intentionally **obtains** or **withholds** property of another by deception." 18 Pa.C.S. § 3922(a) (emphases added). It is evident the act of "obtain[ing] property of another" does not connotate a continuing course of conduct. *Id.* Indeed, Black's Law Dictionary defines "obtain" as "[t]o bring into one's own possession; to procure, esp. through effort[,]" and Merriam-Webster defines the term as "to gain or attain usually by planned action or effort." Black's Law Dictionary (12th ed. 2024) ("OBTAIN"); Merriam-Webster ("OBTAIN"), https://merriam-webster.com/dictionary/obtain (last accessed June 9, 2026). Thus, the moment a defendant gains possession of property by deceptive means, the crime has been committed and the statute of limitations begins to run.

Theft by deception also criminalizes the "**withhold**[ing] property of another by deception." 18 Pa.C.S. § 3922(a) (emphasis added). The OAG insists that "[w]ithholding [is a] word[] that describes continuing conduct[,]" like possession. Amicus Brief at 9. Therefore, so long as the deception continues, and the defendant **withholds** the property, the statute of limitations does not commence. However, the term "withholds" can connotate continuous behavior or be limited to a specific period in time. Merriam-Webster Dictionary defines "withhold" as "to hold back from action" or "to refrain from granting,

giving, or allowing[.]" Merriam-Webster ("WITHHOLD"), https://merriam-webster.com/dictionary/obtain (last accessed June 9, 2026). Thus, the term "withhold" can mean that the defendant refused to return the property upon request. This would trigger the statute of limitations at a single, definite point in time. Nevertheless, the term "withhold" may also allude to an offense that continues so long as the defendant is in possession of the property. At best, therefore, the term "withholds" is ambiguous, and must be construed in favor of the defendant. *See Rosario*, 294 A.3d at 350; *Cardonick*, 292 A.2d at 407.

The statute also provides that a person deceives intentionally if she "creates or reinforces a false impression[.]" 18 Pa.C.S. § 3922(a)(1). This language requires some affirmative action on the part of the defendant. Here, Black's **affirmative** deception began when she hid Grandmother's death (and body) and ended when the SSA made the last monthly payment to Grandmother's account. Black did not respond to the centenarian letters or contact the SSA to question why the payments stopped. At this point, Black did nothing more to "reinforce" the "false impression" she created that Grandmother was still alive. Thus, we conclude the limitations period for Black's charge of theft by deception commenced the day after Grandmother's last SSA payment in November 2010, and the charges filed in May 2020 were untimely.[14]

Although the Superior Court issued several decisions which imply theft by deception is a continuing offense for purposes of the statute of limitations, none addressed the language of Section 5552(d), and each is distinguishable on its facts. *Fisher*, which the Court below relied upon, involved a real estate scheme in which the

---

[14] As previously mentioned, even if we conclude the fraud exception in Section 5552(c)(1) applies, which would have permitted the Commonwealth to file charges within one year after the SSA discovered the theft, that exception extends the limitations period only for an additional three years. Therefore, the statute of limitations expired, at the latest, in November 2018.

defendant convinced numerous victims to purchase property or services from him, but he never delivered the property or completed the services. *See Fisher*, 682 A.2d at 813-814. While the *Fisher* Court analogized the defendant's deceptive conduct to criminal conspiracy — and described theft by deception as a "continuing offense" — the Court found that the prosecution for each count "commence[d] within five years from the **date of [the] last deception** relating to that count." *Id.* at 818 (emphasis added). Therefore, the theft by deception was a "continuing offense" only because the defendant **continued to affirmatively deceive** the victims. *See id.* (noting that within five years of charges: (1) defendant accepted payments on the property from a victim; (2) defendant refused a victim's demand for return of their money after discovering the fraud; (3) a victim terminated their contract with defendant; (4) defendant refused to discuss record owner of property and potential refund with a victim; or (5) defendant concealed the fact that the contracted services would not be performed until after statute of limitations expired). Here, Black did nothing to affirmatively deceive the SSA **after** it stopped Grandmother's monthly payments.

The facts in *Succi* were similar to *Fisher* in that the defendant engaged in an ongoing scheme to deceive customers who contracted with him to perform home improvement services. The Court below cited *Succi* for the proposition that the statute of limitations for theft by deception was "tolled" until the victims discovered they were deceived. *Black*, 207 A.3d at *2 (*citing Succi*, 173 A.3d at 281). Importantly, however, the *Succi* Court used this language because it found the **fraud exception** to the five-year statute of limitations applicable. *See Succi*, 173 A.3d at 281 (*citing* 42 Pa.C.S. § 5552(c)(1)). The Superior Court then determined that the defendant engaged in deceptive conduct with respect to each victim within eight years of the date the victims collectively learned of the defendant's deception (the day the warrant was issued for the

defendant's arrest). *See id.* at 281-282. Thus, the *Succi* Court concluded the charges were timely filed because they fell within the eight-year fraud exception. In fact, the *Succi* Court considered the issue before us — whether theft by deception is a continuing offense under Section 5552(d) — and explicitly stated it was "unable to find a legislative purpose to prohibit a continuing course of conduct 'plainly appear[ed]' in" the theft by deception statute. *Succi*, 173 A.2d at 280. In other words, the Superior Court rejected the Commonwealth's present argument that theft by deception is a continuing crime, as do we.

In *Commonwealth v. McSloy*, 751 A.2d 666 (Pa. Super. 2000), the defendant conspired with another to stage an automobile accident and collect the insurance proceeds. *See id.* at 668. Although the defendant was charged with theft by deception eight years after the accident, the Court determined the statute of limitations commenced when the defendant "first received payment from the insurance companies[,]" which was less than five years before the charges were filed. *Id.* at 669. The Court noted that every element of the offense was committed when the defendant **obtained** the property (*i.e.*, insurance proceeds) by deception. *See id.*

The Commonwealth also relies upon a more recent unpublished Superior Court decision, *Commonwealth v. McGogney*, 293 A.3d 610 (Pa. Super. 2023) (unpub. memo.). *See* Commonwealth's Brief at 16. In that case, the victims' son died in a car accident in November 2010, and they hired the defendant to represent his estate. *See McGogney*, 293 A.3d at *1. The defendant settled the insurance claims without the victims' knowledge and retained the funds as his own, while telling the victims "the litigation had not been settled" and blaming the delay on the Internal Revenue Service. *Id.* (citation omitted). The victims eventually hired another attorney, who uncovered the defendant's deception. In 2016, the defendant delivered a cashier's check to the victims, minus a significant

amount for his purported fee. *See id.* at *2. When charges were filed in 2019, the defendant argued that the offense of theft by deception was untimely because the crime was completed in 2011, when he received (and retained) the insurance settlement; thus, the statute of limitations expired five years later in 2016. *See id.* However, the Superior Court disagreed. While the Court referred to the crime as a "continuous course of conduct[,]" it explained that the defendant continued to deceive the victims for years after the settlement was paid, noting that his deceptions, "including the allegation that the IRS was preventing disbursement of the … money, began in 2012 and continued through … 2018, when [he] corresponded by email with" the victims' new attorney. *Id.* at *4 (citations omitted). Like in *Fisher* and *Succi*, the defendant in *McGogney* continued to **affirmatively deceive** the victims within the five-year limitations period.[15]

Finding no clear purpose in the language of Section 3922 that indicates the legislature intended the crime of theft by deception to be a continuing offense, we conclude the statute of limitations in Black's case commenced the day after the last SSA payment was deposited into Grandmother's joint bank account. Black's silent acceptance of that payment was an affirmative act which "reinforce[d] a false impression" she, herself, had created that Grandmother was not deceased. 18 Pa.C.S. § 3922(a)(1). Since the Commonwealth commenced Black's prosecution for theft by deception after the limitations period expired, we vacate her conviction for that offense.

---

[15] The Commonwealth's reliance on *Johnson* — and the so-called "'Continuing Coverup' Doctrine" — is similarly untenable. Commonwealth's Brief at 11; *see also id.* at 14-15, 17. The co-defendants in *Johnson* were **not** charged with theft by deception. Instead, they challenged the timeliness of their prosecutions for **conspiracy** to commit murder and **conspiracy** to commit corrupt organizations. *See Johnson*, 615 A.2d at 1329. The *Johnson* panel correctly observed that "the crime of conspiracy is a continuing offense." *Id.* That decision has no relevance to the case before us.

## V. RECEIVING STOLEN PROPERTY

Next, Black challenges her conviction of RSP, which is codified at Section 3925 of the Crimes Code:

> A person is guilty of theft if he intentionally **receives, retains, or disposes** of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a) (emphasis added). While the statue explains that "receiving" property means "acquiring possession, control or title, or lending on the security of the property[,]" it does not define what constitutes "retain[ing]" property for purposes of the offense. 18 Pa.C.S. § 3925(b). That is the focus of the parties' arguments.

Clearly, the date a defendant receives or disposes of property she knows or believes to be stolen refers to a specific point in time — the offense of RSP is complete on that date. However, the pertinent question is whether the offense continues when the defendant **retains** stolen property after the five-year limitations period has expired, and, specifically, whether the addition of this language **plainly demonstrates** "a legislative purpose to prohibit a continuing course of conduct" for purposes of extending the limitations period under Section 5552(d). 42 Pa.C.S. § 5552(d).

Black insists the language of the RSP statute does not plainly indicate an intent to prohibit "a continuing course of conduct[.]" Black's Brief at 36. She argues that while "retaining" property could refer to "continuing conduct[,]" at best, the language is ambiguous since it could "plausibly refer to the momentary decision to keep such property after acquiring the requisite guilty knowledge." *Id.* at 38-39. Black references a "split of authority" from other jurisdictions as to whether "such offenses can be viewed as continuing in nature." *Id.* at 39. *See also id.* at 40-42 (collecting cases). Because the term is ambiguous, Black maintains it must be construed in her favor, and the statute of limitations period commenced when she received (and retained) the last SSA payment in

November 2010.  *See id.* at 43-44.  To the extent the Commonwealth contends she used Grandmother's SSA funds to pay her mortgage, Black asserts the Commonwealth "never identified when the last of [those] funds might have been spent and disposed of;" thus, it did not prove that she "disposed of" those funds within the five-year limitations period.  *Id.* at 44.  While Black acknowledges the Superior Court's holding in *Farrar* that RSP is a "continuing offense," she characterizes the Court's analysis as "paper-thin[,]" and distinguishes that case on its facts.  *Id.* at 45.  In *Farrar*, the defendant continuously retained the stolen antique furniture at issue; whereas, here, Black emphasizes "there was no showing below that [she] even had the funds in question within five years of the filing of the" RSP charge.  *Id.* at 46-47.

The Commonwealth, of course, takes a different approach.  Relying on *Farrar*, it insists RSP "is an ongoing offense which continues as long as the perpetrator **retains possession** of the stolen property."  Commonwealth's Brief at 20 (emphasis added).  While the Commonwealth recognizes that in *Hawkins*, the Superior Court distinguished non-fungible property (*i.e.*, antique furniture) from fungible property (*i.e.*, checks), it insists that decision focused on the fact that there was no evidence the defendant "retained the stolen funds after the funds were converted from traceable checks to untraceable mutable cash."  *Id.* at 21 (emphasis omitted) (*citing Hawkins*, 439 A.2d at 752).  Here, however, the Commonwealth maintains there was "specific paperwork showing that [Black] used funds from her joint direct deposit account with [Grandmother] to pay the mortgage on the" York County property.  *Id.* (record citations and emphasis omitted).  Accordingly, it concludes the trial court made a "reasonable inference … from the joint stipulations that [Black] retained funds in the account uninterrupted from their direct deposit, or in the alternative at the very least retained the stolen funds in the form of home equity until

foreclosure on the house in May of 2018." *Id.* at 22. Therefore, the RSP offense charged in May 2020 was timely.

Similar to its discussion of the first issue, the OAG focuses on the language of the statute, and specifically the term "retains." Amicus Brief at 7. It insists "retains" describes "continuing conduct," and, therefore, the Legislature intended the offense of RSP "to prohibit the **course of conduct** it has made criminal" for purposes of the statute of limitations. *Id.* at 9 (emphasis added). The OAG refutes Black's assertion that the term "retains" can mean "momentary control" because the statute "already penalizes 'receiving'" stolen property; thus, the term "retain" would be rendered mere surplusage. *Id.* at 11. While the OAG recognizes the Legislature employed specific language in other statutes to plainly indicate its intent that the offense constitutes a "continuing course of conduct[,]" it asserts that the language was required in those statutes because, unlike RSP, the elements of those crimes "do not make them continuing." *Id.* at 14-15 and n.3 (asserting (1) corrupt organizations requires two acts which are not continuing offenses; (2) the crime of conspiracy is arguably complete when the agreement to commit an offense is reached; and (3) "[t]he elements of Medicaid fraud are not continuing acts[,]" but simply disparate ways to submit improper claims). The OAG concludes that the term "retains," like "possesses," "necessarily describe[s] ongoing conduct." *Id.* at 14.

Our analysis, as with the first issue, focuses on the statutory language of the Crimes Code and the Judicial Code.[16] We must determine whether the RSP statute — which criminalizes the **retention** of stolen property — evinces a legislative purpose to prohibit a continuing course of conduct. *See* 18 Pa.C.S § 3925(a); 42 Pa.C.S. § 5552(d).

---

[16] Our standard of review of a question involving statutory interpretation is *de novo*, and our scope of review is plenary. *See Gamby*, 283 A.3d at 304 (citation omitted).

Relying on its prior decisions in *Farrar* and *Hawkins*, the Superior Court concluded RSP is "an ongoing offense, which continues as long as the perpetrator retains possession of the stolen property." *Black*, 307 A.3d at *4. Because Black did not **return or relinquish** any of the stolen SSA funds, the Court concluded she "retained" the funds and the offense was still ongoing at the time the Commonwealth filed the charges against her. *Id.*

*Farrar* supports this conclusion. In that case, the defendant, her husband, and her son entered a man's home in Maryland without his permission in March 1974 and stole three pieces of antique furniture. *See Farrar*, 413 A.2d at 1096. The family moved to Pennsylvania six months later, taking the furniture with them. Nearly two years later, in August 1976, a Pennsylvania state trooper, armed with a warrant, searched the defendant's home and seized two of the stolen antiques. The trooper returned a week later with the sister of the Maryland man whose home was robbed. At that time, the trooper seized the third stolen antique. On August 17, 1976, the defendant was charged with, *inter alia*, RSP. *See id.*

On appeal, the defendant raised seven issues, the first two of which are relevant to our discussion. First, she maintained the trial court did not have jurisdiction "because the crime occurred before she and her family moved to Pennsylvania[;]" instead, the offense was complete when she received and retained the stolen antiques in Maryland. *Farrar*, 413 A.2d at 1098. In a brief analysis, the Superior Court opined that RSP is an "ongoing" offense based upon the "legislature's inclusion of a prohibition against **retaining** and disposing of stolen property[.]" *Id.* (emphasis added). The Court relied upon a footnote in another decision characterizing RSP as an ongoing offense, albeit in

a different context,[17] and cases from California and Louisiana. *See id.* (citations omitted). Because the defendant still retained the stolen antiques while in Pennsylvania, the panel determined the trial court had jurisdiction.

Next, the defendant argued that the then two-year statute of limitations for RSP expired before she was charged with the offense. She asserted that "she committed the offense when she first received and retained the property in March 1974," but was not charged until August 1976. *Farrar*, 413 A.2d at 1098. In a one-sentence analysis, the Superior Court rejected the claim: "[W]e have just concluded that [the] offense was a 'continuing' one, which did not terminate until the stolen property was taken from her in August 1976." *Id.*

Thus, while the Superior Court's analysis of the statute of limitations claim in *Farrar* was less than robust, the Court determined that the crime was not complete until the Pennsylvania troopers seized the stolen antiques — in other words, the defendant continued to "retain" the stolen property while living in Pennsylvania.

This subtle distinction became clearer in *Hawkins*, a case that involved stolen checks, as opposed to antique furniture. In *Hawkins*, like here, the defendant was charged with theft by deception and RSP, among other offenses, after it was discovered she "fraudulently obtain[ed] funds from the federal Manpower" program. *Hawkins*, 439 A.2d at 749. In 1974 and 1975, she received and cashed checks for work she did not perform. She was charged following a grand jury proceeding in 1978, and later found guilty by a jury.

On appeal, the defendant argued that the charges were filed after the then two-year statute of limitations period had expired. The Superior Court determined that her

---

[17] *See Commonwealth v. Ellis*, 335 A.2d 512, 515 n.3 (Pa. Super. 1975) (holding officer had probable cause to arrest defendant for RSP when he encountered defendant carrying an adding machine in a high crime area at 2:00 a.m.).

prosecution of theft by deception was timely under the fraud exception[18] — the Court determined that the discovery of the offenses occurred, at the earliest, on April 12, 1977, when the defendant admitted she received and cashed the checks, and the charges were filed less than one year later, on April 11, 1978. *See Hawkins*, 439 A.2d at 750-751.

However, the Court reversed the defendant's RSP conviction, finding the prosecution commenced after the limitations period expired. First, the Court determined that the fraud exception was not applicable because "fraud is not required to prove the elements of" RSP. *Hawkins*, 439 A.2d at 752. Second, it rejected the Commonwealth's reliance on *Farrar*, because the defendant did not retain the stolen property (*i.e.*, the checks) within the relevant statutory limitations period. The Superior Court opined:

> We are unable to conclude, in the instant case, that there has been any "retention" of property beyond that point prior to the commencement of the investigation when the [defendant] received the proceeds from the checks. We distinguish *Farrar* not because, as the Commonwealth suggests, the items there were "unique", but quite simply because *Farrar* involved property that was retained and the instant case does not.

*Id.* (reformatted).

Thus, both *Farrar* and *Hawkins* support the argument that RSP is a continuing offense, so long as the defendant retains the stolen property. Neither case, however, considered the limitations period in the context of the statutory language at issue here — Section 5552(d). As explained above, an offense is committed — and the limitations period begins to run — "either when every element occurs, or, **if a legislative purpose to prohibit a continuing course of conduct plainly appears**, at the time when the course of conduct or the complicity of the defendant therein is terminated." 42 Pa.C.S. § 5552(d) (emphasis added). Thus, we turn to the RSP statute and consider whether the

---

[18] The *Hawkins* Court cited the fraud exception, which at that time was codified as 18 Pa.C.S. § 108(c)(1). *See Hawkins*, 439 A.2d at 750. It was identical to the present exception codified at Section 5552(c)(1). *See* 42 Pa.C.S. § 5552(c)(1).

addition of language criminalizing the **retention** of stolen property evidences a legislative purpose to prohibit a continuing course of conduct.

Black's Law Dictionary defines "retain" as "[t]o hold in possession or under control; to keep and not lose, part with, or dismiss."  Black's Law Dictionary (12th ed. 2024) ("RETAIN").  The definition in Merriam-Webster's Dictionary is similar — "to keep in possession or use[.]"  Merriam-Webster ("RETAIN"), https://www.merriam-webster.com/dictionary/retain (last accessed June 9, 2026).  The Commonwealth insists the language of the statute clearly demonstrates the Legislature intended to prohibit a continuing course of conduct that terminates only when the defendant "has returned or relinquished" the stolen property.  Commonwealth's Brief at 19.  Here, it argues, Black "retained" the funds because she used them to pay the mortgage on her York County property.  *Id.* at 21.  It was not until 2018, when the property was foreclosed by the bank, that she no longer "retained" the SSA funds.  *Id.* at 22.

Black insists that the term "retain" — like "withhold" — is ambiguous.  She maintains "it could just as plausibly refer to the momentary decision to keep [stolen] property after acquiring the requisite guilty knowledge[,]" as it could refer to the continuous possession of stolen property.  Black's Brief at 38-39.  We disagree.  The term "retain" is synonymous with "possess."  Merriam-Webster ("RETAIN"), https://www.meriam-webster.com/thesaurus/retain (last accessed June 9, 2026).  The statute provides in the disjunctive that a person is guilty of RSP  "if he intentionally receives, retains, **or** disposes of"  stolen  property.   18  Pa.C.S.  §  3925(a)  (emphasis added).   Therefore, the Commonwealth may file RSP charges against a defendant so long as she intentionally retains (or continues to possess) property, that she knows, or reasonably should have known, was stolen, absent an intent to restore the property to the owner.  *See id.*

Our conclusion that RSP is a continuing offense, however, does not resolve Black's challenge. Rather, we must consider whether Black retained possession of the stolen SSA funds within five years of the date the charges were filed.

The facts in the case before us are more similar to *Hawkins* than *Farrar*. Although the Commonwealth insists it presented competent evidence to prove Black used the stolen SSA payments to pay the mortgage on her York County property, she no longer **retained** the stolen property in the form in which it was received — that is, a deposit of funds in the joint account. If we were to accept the Commonwealth's reasoning, the statute of limitations would be rendered meaningless in any case in which a defendant steals currency, or converts a stolen item — be it cash, checks, or even objects — into something else. What if the defendant in *Farrar* traded the antiques for a new car? Would the statute of limitations begin to run on the day of the trade, or would we conclude the defendant "retained" the value of the antiques as long as she kept the car? The latter proposition is contrary to the text of the statute.

Under the RSP statute, there are three starting points for the commencement of the statute of limitations — the date the defendant received the stolen property, the period during which she retained the property, or the date she disposed of the stolen property. Logically, a defendant no longer retains stolen property after she disposes of it. Here, the Superior Court focused on the fact Black had not **returned or relinquished** the property to its owner (the SSA) by the time the charges were filed. *See Black*, 307 A.3d at *4. However, the date a defendant returns or relinquishes stolen property to its rightful owner is not a relevant consideration under the plain language of the statute. Rather, it is when a defendant disposes of stolen property — in whatever form — that the statute of limitations begins to run.

Even assuming Black used the SSA funds to pay her mortgage, she "disposed" of the stolen funds when she transferred those funds from the joint account to the mortgage holder — and the limitations period began to run on that date. Neither the parties' trial stipulations, nor the records attached thereto, identify when the last SSA payment was transferred to the bank. *See* Stipulated Facts at 1-4. Further, the mortgage modification paperwork, which the Commonwealth insists proves that Black used the SSA funds to pay her mortgage, is dated March 2010 — more than five years before the RSP charge was filed. *See* Motion to Remove from Trial List, 3/15/22, Exhibit F (Mortgage Modification paperwork). Absent any evidence Black "retained" the SSA funds — even in a separate account — the statutory period commenced in November 2010, when the last SSA payment was deposited in the joint account. Therefore, the RSP charge filed in May 2020, was well beyond the five-year statute of limitations, and we vacate Black's conviction of RSP.

## VI. CONCLUSION

There is no indication in the language of the theft by deception statute that the legislature intended the crime to be a continuing offense for purposes of extending the commencement of the statute of limitations. Rather, the limitations period begins to run when every element of the crime has occurred — that is, when a defendant intentionally obtains or withholds property of another by deception. The crime continues so long as the defendant affirmatively creates or reinforces the false impression supporting the deception. Here, the statute of limitations for Black's crime commenced the day she obtained her dead grandmother's last SSA benefit payment, and failed to notify the SSA (or any authority) of the death.

Conversely, the language of the RSP statute provides that the crime continues so long as the defendant "retains" the stolen property. However, once the defendant "disposes" of the property, or converts it to another form, the statute of limitations begins to run. Here, the statute of limitation for Black's RSP charge also commenced the day after she obtained her the final SSA payment intended for her dead grandmother. There was no evidence presented that she "retained" those funds after that date. The fact that she may have transferred them to pay for her mortgage is irrelevant.

For the reasons above, we vacate Black's convictions for theft by deception and RSP, and remand for further proceedings.

Chief Justice Todd and Justices Donohue and Dougherty join the opinion.

Justice Brobson files a concurring opinion.

Justice Wecht files a concurring and dissenting opinion.

Justice Mundy files a concurring and dissenting opinion.